[No. 11531-0-II.   Division Two.   October 2, 1989.]

THE STATE OF WASHINGTON, *Appellant,* v. BRADLEY M. BOLAND, *Respondent.*

*John F. Raymond, Prosecuting Attorney,* and *Steven L. Olsen, Deputy,* for appellant.

*Michael A. Frost,* for respondent.

PETRICH, J.—The State appeals the order of dismissal of criminal charges of possession of legend drugs and controlled substances against Bradley Boland based on a suppression of evidence seized by a search warrant that effectively abated prosecution of the charges. RAP 2.2(b)(1). The trial court suppressed the evidence because in its judgment the search warrant was obtained on information gathered in violation of the accused's right to privacy as guaranteed by article 1, section 7 of our State Constitution.

This case presents the issue of whether or not the police may, without legal process, search garbage left for collection outside the curtilage of a home. We hold that they may. Accordingly, we reverse.

Investigation of this case resulted from an anonymous tip that Boland was selling unprescribed legend drugs. A check with the State Board of Pharmacy showed that Boland did not possess a license to dispense legend drugs.

Police officers obtained a warrant for Boland's power records to establish the address of his residence. Next, on four nights between March 18, 1987, and April 8, 1987, police officers observed Boland's garbage can on the street right of way, about 15 feet from his property line, before the day scheduled for garbage collection. On at least one of these occasions, police observed Boland place the garbage can out for collection. The garbage can lid was tightly secured and a small log or heavy board had been placed on its top.

On these four nights, the police emptied the contents of Boland's garbage can into a second container and returned to the police station where the garbage was examined. The garbage was searched without the authority of a warrant.

Evidence obtained from Boland's garbage can and other information known to law enforcement authorities led a Jefferson County deputy prosecutor to obtain a search warrant for Boland's residence. The warrant was issued on April 8, 1987, and a search was conducted at the residence on the same day. Based on the evidence seized from the residence, the State charged Boland with one count of unlawful possession of legend drugs, RCW 69.41.030, and two counts of possession of a controlled substance with intent to deliver, RCW 69.50.401(a)(1)(i), (ii).

The trial court suppressed the evidence seized from the residence on the basis that article 1, section 7 of the Washington State Constitution prohibited the warrantless search and seizure of garbage. The trial court found that probable cause to search the residence did not exist without the information obtained from the garbage search. The charges

against Boland were dismissed as a result of insufficient independent evidence on which to base the prosecution.

In *California v. Greenwood,* 486 U.S. 35, 100 L. Ed. 2d 30, 108 S. Ct. 1625 (1988), the United States Supreme Court held that the fourth amendment to the United States Constitution did not prohibit the warrantless search of garbage left for collection outside the curtilage of a home. The *Greenwood* Court reasoned that the Fourth Amendment claim of the respondents in that case was defeated because they had exposed their garbage to the public by placing it on the curb of the street outside of their home. 486 U.S. at 40. The Court stated that garbage placed curbside for collection is suited for public inspection, noting the accessibility of the garbage to animals, children, scavengers, snoops, and other members of the public and that the respondents had placed their trash at the curb for the express purpose of conveying it to a third party. *Greenwood,* at 40. "[T]he police cannot reasonably be expected to avert their eyes from evidence of criminal activity that could have been observed by any member of the public." *Greenwood,* at 41. For these reasons, the Court concluded that "society would not accept as reasonable respondents' claim to an expectation of privacy in trash left for collection in an area accessible to the public . . .". *Greenwood,* at 41.

Washington courts have ruled that Const. art. 1, § 7 generally provides greater protection against warrantless searches and seizures than U.S. Const. amend. 4. *State v. Bell,* 108 Wn.2d 193, 196, 737 P.2d 254 (1987); *State v. Myrick,* 102 Wn.2d 506, 510, 688 P.2d 151 (1984). Boland urges this court to uphold the order of the trial court on this basis by ruling that, under our state constitution, the warrantless search of his garbage was an unconstitutional intrusion into his private affairs.

In *State v. Gunwall,* 106 Wn.2d 54, 58, 720 P.2d 808 (1986), the Washington Supreme Court set forth six nonexclusive factors to consider in determining whether to resort to independent state constitutional grounds to decide a case rather than deferring to comparable provisions of the

United States Constitution as interpreted by the United States Supreme Court. These factors are as follows: (1) the textual language of the state constitution; (2) significant differences in the texts of parallel provisions of the state and federal constitutions; (3) state constitutional and common law history; (4) preexisting state law; (5) structural differences between the state and federal constitutions; and (6) matters of particular state or local concern. *Gunwall,* 106 Wn.2d at 61–62.

After considering the six factors outlined above, the *Gunwall* court concluded that Const. art. 1, § 7 prohibited the police from obtaining a telephone subscriber's long distance toll records and pen register tapes without legal process. The protection extended to telephonic communication was thus broader under the state constitution than under the federal constitution, which had been interpreted by the United States Supreme Court to permit the installation of a pen register on a personal telephone line without a warrant in *Smith v. Maryland,* 442 U.S. 735, 61 L. Ed. 2d 220, 99 S. Ct. 2577 (1979). Because the *Gunwall* court analyzed the same constitutional provisions at issue in this case, much of its reasoning is applicable here.

The first and second *Gunwall* factors direct this court to examine the language of the state constitutional provision and its differences from the parallel federal constitutional provision. Const. art. 1, § 7 provides that "[n]o person shall be disturbed in his private affairs, or his home invaded, without authority of law." The Fourth Amendment states as follows:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

The language of the Fourth Amendment has been interpreted as requiring a search warrant only if the defendant possessed a "reasonable expectation of privacy" in the place or thing searched. *Myrick,* 102 Wn.2d at 510 (quoting *Katz*

*v. United States,* 389 U.S. 347, 357, 19 L. Ed. 2d 576, 88 S. Ct. 507 (1967)). Conversely, under Const. art. 1, § 7, the "relevant inquiry for determining when a search has occurred is whether the State unreasonably intruded into the defendant's 'private affairs.'" *Myrick,* 102 Wn.2d at 510.

> Const. art. 1, § 7 analysis encompasses those legitimate privacy expectations protected by the Fourth Amendment, but is not confined to the subjective privacy expectations of modern citizens who, due to well publicized advances in surveillance technology, are learning to expect diminished privacy in many aspects of their lives. Rather, it focuses on those privacy interests which citizens of this state have held, and should be entitled to hold, safe from governmental trespass absent a warrant.

(Citations omitted.) *Myrick,* 102 Wn.2d at 510–11. *Gunwall* recognized that the difference in language between the provisions allows a more expansive interpretation of Const. art. 1, § 7; 106 Wn.2d at 65. The *Gunwall* court also observed that the third factor, state constitutional and common law history, supports an independent reading of the state provision.

The fourth *Gunwall* factor directs the court to examine preexisting state law which can "help to define the scope of a constitutional right later established." 106 Wn.2d at 62. In *Gunwall,* the court found a long history of statutory protection of telephonic and other electronic communication that lent strong support for an independent reading of the state constitution. We are unaware of similar authority preexisting the ratification of Const. art. 1, § 7 that would indicate a history of protecting a privacy interest in garbage.[1]

---

[1]Boland argues that local ordinances governing the collection and disposal of garbage evidences a societal expectation in the privacy of garbage. He cites Port Townsend ordinances which require close–fitting lids on garbage containers and permits for garbage collection. We note that the purpose of a lid is to "entirely prevent rats, mice or flies from reaching the contents thereof, and [to] prevent odors and gasses from escaping therefrom." Port Townsend Municipal Code 6.04-.030. In our estimation, the garbage collection and disposal ordinances referred to by Boland relate to sanitation and the management of waste disposal rather than to the protection of privacy interests in garbage.

*Gunwall* also advises the court to examine differences in the structure between the state and federal constitutions. The *Gunwall* court observed that the federal constitution is a

> *grant* of limited power authorizing the federal government to exercise only those constitutionally enumerated powers expressly delegated to it by the states, whereas our state constitution imposes *limitations* on the otherwise plenary power of the state to do anything not expressly forbidden by the state constitution or federal law.

106 Wn.2d at 66. This consideration also supports an independent reading of the state constitution.

The sixth *Gunwall* factor examines whether the matter is of particular state or local interest or whether there is a need for national uniformity. The existence of long–standing legislative protection of telephonic communication was persuasive in *Gunwall,* where the court concluded that state policy considerations outweighed the need for national uniformity regarding the availability of telephone records. As discussed under criterion four, however, we have not observed a similar intent in state and local legislation to protect the privacy of garbage. While state and local regulation of garbage collection indicates that garbage is largely of local concern, the local nature of garbage does not weigh in favor of its heightened protection under the state constitution.

Our consideration of the *Gunwall* factors leads us to believe that the state constitution should not be construed to provide greater protection to garbage than is provided by the federal constitution as interpreted by the United States Supreme Court. We are especially cognizant of the lack of law preexisting the constitution and the lack of current regulation designed to protect a privacy interest in garbage.

■ The *Gunwall* court recognized that "[t]he opinions of the Supreme Court, while not controlling on state courts construing their own constitutions, are nevertheless important guides on the subjects which they squarely address." 106 Wn.2d at 60–61 (quoting *State v. Hunt,* 91 N.J. 338, 363, 450 A.2d 952 (1982) (Handler, J., concurring)). *See*

*also State v. Reece,* 110 Wn.2d 766, 781, 757 P.2d 947 (1988) (construing parallel state and federal free speech provisions in an obscenity context). *California v. Greenwood, supra,* held that no reasonable expectation of privacy, that is, a subjective expectation that society is willing to accept as objectively reasonable, exists in garbage once it is placed outside the curtilage of a home for collection. Even though the language of Const. art. 1, § 7 may allow a more expansive interpretation in given circumstances than that given the Fourth Amendment, consideration of the *Gunwall* factors leads us to the conclusion that Const. art. 1, § 7 does not further restrict police examination of garbage so located.

The order of the trial court is hereby reversed, and the matter is remanded for proceedings consistent with this opinion.

Worswick, J., concurs.

Alexander, C.J. (dissenting)—I dissent. In my judgment, privacy rights of Washington citizens, as recognized in article 1, section 7 of the state constitution, are disturbed by city police who, without benefit of a search warrant, rummage through garbage left for collection at a location in close proximity to the citizen's residence.

I recognize that my view of the privacy provisions of our state constitution's Declaration of Rights is somewhat subjective, but no more so than the majority's view. The majority does acknowledge, however, that Washington courts have generally held that article 1, section 7 of our state constitution provides more protection against warrantless searches and seizures than the United States Constitution amendment 4. *State v. Bell,* 108 Wn.2d 193, 196, 737 P.2d 254 (1987). This is certainly understandable considering the broad language of our constitution that "[n]o person shall be disturbed in his private affairs . . ." Const. art. 1, § 7. In addition, our Supreme Court has expressly stated that the location of the search is not determinative;

rather, the appropriate inquiry is whether the State has unreasonably intruded into the individual's private affairs. *See State v. Myrick,* 102 Wn.2d 506, 510–13, 688 P.2d 151 (1984). In *Myrick,* court said the focus is on "those privacy interests which citizens of this state have held, and should be entitled to hold, safe from governmental trespass absent a warrant." 102 Wn.2d at 511.

Interestingly, the Supreme Courts of two of our neighboring states have found that police action such as that taken here by the Port Townsend police violated provisions of their state constitutions.

In *People v. Krivda,* 5 Cal. 3d 357, 486 P.2d 1262, 96 Cal. Rptr. 62 (1971), *vacated and remanded,* 409 U.S. 33, 34 L. Ed. 2d 45, 93 S. Ct. 32 (1972), *aff'd on remand,* 8 Cal. 3d 623, 504 P.2d 457, 105 Cal. Rptr. 521, *cert. denied,* 412 U.S. 919 (1973), the California Supreme Court was called upon to examine article 1, section 13 of the California Constitution,[2] a provision identical in wording to the fourth amendment to the United States Constitution. The California court concluded that a warrantless seizure of a defendant's trash was a violation of that state's constitution. The court in *Krivda* was following its reasoning in *People v. Edwards,* 71 Cal. 2d 1096, 1104, 458 P.2d 713, 80 Cal. Rptr. 633, 638 (1969), where the court said that where a trash can is left for collection close to one's home, there is a reasonable expectation of privacy. The court stated:

> We can readily ascribe many reasons why residents would not want their castaway clothing, letters, medicine bottles or other telltale refuse and trash to be examined by neighbors or others,

---

[2]Article 1, section 13 of the California Constitution provides, in part:
"**§ 13 Search and seizure**
"The right of the people to be secure in their persons, houses, papers, and effects against unreasonable seizures and searches may not be violated; . . ."
    Article 1, section 1 of the California Constitution states:
"All people are by nature free and independent and have inalienable rights. Among these are enjoying and defending life and liberty, acquiring, possessing, and protecting property, and pursuing and obtaining safety, happiness, *and privacy.*" (Italics mine.)

at least not until the trash has lost its identity and meaning by becoming part of a large conglomeration of trash elsewhere. . . .

Similarly, the Supreme Court of Hawaii has held that the seizure of a defendant's trash, without benefit of a warrant, is the type of governmental intervention that article 1, section 6 of the Hawaii constitution[3] was intended to prevent. *State v. Tanaka,* 67 Hawaii 658, 701 P.2d 1274 (1985). The Hawaii court wisely recognized that if it were to hold otherwise, police could indiscriminately search everyone's trash without any reason and thereby learn of their activities, associations and beliefs. *State v. Tanaka,* 701 P.2d at 1277. This conduct, it would seem, is to be abhorred as much in Washington as in Hawaii.

The majority makes much of the point that the garbage can which was searched by the Port Townsend police was slightly outside the curtilage of Boland's premises. Any expectation of privacy, they say, was, therefore, gone. I disagree. If a garbage can is placed in the location designated for garbage collection, as was the case here, and if that location is still closely identified with the premises from which the garbage came, albeit slightly beyond the curtilage of the premises, it would seem obvious that there is an expectation that the contents of the garbage can are private until such time as they are mixed with other garbage. That expectation of privacy would seem to be as great as it would *be if the garbage can were just a few feet closer to the home* it served and, thus, within the curtilage of the premises which it serves.

The view I have expressed is consistent with the reasoning of our Supreme Court in *State v. Gunwall,* 106 Wn.2d 54, 720 P.2d 808 (1986). In that case, the court was concerned with telephone records. The *Gunwall* court recognized that although a telephone subscriber knowingly

---

[3]Article 1, section 6 of the Hawaii Constitution provides:

"The right of the people to privacy is recognized and shall not be infringed without the showing of a compelling state interest. The legislature shall take affirmative steps to implement this right."

discloses the numbers dialed by him to the telephone company, such disclosure does not alter the telephone user's expectation of privacy:

> Telephone calls cannot be made except through the telephone company's property and without payment to it for the service. This disclosure has been necessitated because of the nature of the instrumentality, but more significantly the disclosure has been made for a limited business purpose and not for release to other persons for other reasons.

*Gunwall*, 106 Wn.2d at 68 (quoting *State v. Hunt*, 91 N.J. 338, 347, 450 A.2d 952 (1982)).

The "disclosure" one makes by placing his garbage on the sidewalk for pickup is similar to the disclosure discussed in *Gunwall* because it is necessitated by the nature of garbage collection. Furthermore, the disclosure is made by an individual for the limited purpose of having his or her garbage collected by the municipality or private company which possesses a monopoly on garbage collection. By turning the garbage over to the garbage collector, a person should not be deemed to have disclosed its contents to the world.

It is perhaps difficult for one to get emotional about garbage. It is, after all, just garbage. On the other hand, most persons would feel that their privacy was being invaded if police were allowed free rein to rummage through their automobile or their dresser drawers. Garbage cans excite less interest. One's garbage does, however, tell a great deal about the person whose garbage it is—perhaps it reveals more than does the contents of one's dresser drawers. We should be slow to permit anyone, including the police, to pry into a person's privacy by examining a person's private places, including their garbage cans while those cans are still identified with a particular premises.[4] On the other

---

[4] The Port Townsend city government has legislatively recognized that garbage is to a degree, sacrosanct. Port Townsend Municipal Code 6.04.040 provides:

6.04.040 Permit to collect. It is unlawful for anyone except city employees to collect, remove, or transport garbage, offal, or any other offensive or obnoxious substances or to operate any vehicle for such purpose through the streets, highways or other ways within the city without first having obtained a permit from the city health officer. The permit shall be numbered and shall be valid

hand, if the police have probable cause to examine one's garbage, then let them do it the old fashioned way—obtain a warrant. I would affirm the Superior Court Judge of Jefferson County who wisely held that this search violated our state constitution.

Review granted at 113 Wn.2d 1035 (1990).

for one year, unless sooner revoked by the city health officer; provided, however, that such service may be let by contract to others, in which case the contractor shall be substituted for the superintendent insofar as the terms of Section 6.04.040 through 6.04.070 provide.

Washington's largest city has adopted an even tougher stance toward those who would be garbage voyeurs. Seattle City Code 21.36.100 provides:

**21.36.100 Unlawful use of garbage can.**

It is unlawful for anyone other than the owner or one authorized by him to deposit any material in any garbage can or detachable container or to remove the cover therefrom or to remove or disturb any of the contents thereof except for collection.