[No. 56666-6.   En Banc.   November 15, 1990.]

THE STATE OF WASHINGTON, *Respondent,* v. BRADLEY M. BOLAND, *Petitioner.*

*Michael A. Frost* and *Peter B. Tucker,* for petitioner.

*John F. Raymond, Prosecuting Attorney,* and *Mark Huth, Deputy,* for respondent.

*Richard Hansen, Katrina Pflaumer, Robert H. Whaley,* and *Bryan P. Harnetiaux* on behalf of Washington Association of Criminal Defense Lawyers, Washington State Trial

Lawyers Association, and American Civil Liberties Union of Washington, amici curiae.

DOLLIVER, J.—Sometime in September 1986, both the office of the Prosecuting Attorney for Jefferson County and the Port Townsend City Police Department received anonymous letters alleging defendant Bradley Boland was distributing legend drugs. Legend drugs are drugs of which federal law prohibits distribution without a prescription from a physician. The anonymous letter was accompanied by a brochure containing the names of Health West Products and Brad Boland. Shortly after receiving the letter, the investigating officer attempted to order legend drugs from the defendant through the mail. When defendant received the letter, he responded with a letter stating he did not understand the inquiry. The letter, however, was returned to defendant with a notation stating the addressee did not live at the address given.

In October 1986, the investigating officer applied for a search warrant (based on the letter and brochure) in order to gain access to defendant's power records for the purpose of verifying his address. The warrant was served on November 6, 1986, and defendant's address was subsequently verified.

On March 18, 1987, the police began a series of four warrantless searches of defendant's garbage hoping to locate sufficient evidence to obtain a warrant to search his residence. The other three searches occurred on March 25, April 1, and April 8. Before each of the searches, police officers would observe defendant take his trash out to the corner for collection where he would place his trash can in approximately the same location. The lid of defendant's trash container fit securely on the can, and each time defendant took the can out, he would place a heavy piece of wood on top of the lid. On each occasion, the officers returned to defendant's residence during the night, emptied the contents of the trash can into a plastic bag and transported it to the police station. Once there, the trash was

made available to state and federal agents who would examine its contents for evidence of drug–related activities. On at least three of these occasions, such evidence was uncovered.

After inquiring with the Washington State Board of Pharmacy in order to verify defendant did not hold a license to dispense legend drugs, the investigating officer applied for a warrant to search defendant's home. The warrant was issued based on the evidence obtained from defendant's trash and the letter and brochure received from the informant. On April 8, 1987, the police searched defendant's house and seized a large quantity of legend drugs as well as a card of tablets and a bottle containing controlled substances. Defendant was charged with unlawful possession of legend drugs (RCW 69.41.030) and two counts of possession of a controlled substance with intent to deliver (RCW 69.50.401(1)(i) and (ii)).

Defendant filed a motion to suppress the evidence gathered during the search of his house. Defendant argued the evidence was the fruit of the warrantless search of his garbage which violated the fourth amendment to the United States Constitution and Const. art. 1, § 7. The trial court granted the motion, stating that in light of Const. art. 1, § 7,

> it is clear that a law enforcement officer's examination of the contents of a garbage container placed curbside for collection is an unconstitutional intrusion into a person's private affairs, particularly when the city ordinance requires the container to be removed from the person's property and placed at the side of the street for ease of collection.

The trial court also ordered suppression of the evidence seized in defendant's home since, without the evidence taken from the garbage, no probable cause existed upon which to base the search warrant. The trial court subsequently ordered the charges against defendant be dropped.

The State appealed the trial court's ruling to the Court of Appeals, which reversed the trial court. *State v. Boland,* 55 Wn. App. 657, 659, 781 P.2d 490 (1989). Defendant

appeals the Court of Appeals decision to this court. We reverse the Court of Appeals and affirm the trial court.

We note at the outset that the United States Supreme Court has held under the fourth amendment to the United States Constitution that no reasonable expectation of privacy exists in garbage which has been left on the curbside for collection. *California v. Greenwood,* 486 U.S. 35, 100 L. Ed. 2d 30, 108 S. Ct. 1625 (1988). Consequently, our review of the privacy interest at issue in this case is limited to an examination under our state constitution. Given that the fundamental purpose of the state constitution is to govern the relationship between the people and their government rather than to govern the relationship between private parties, *Southcenter Joint Venture v. National Democratic Policy Comm.,* 113 Wn.2d 413, 780 P.2d 1282 (1989), it also follows that we concern ourselves only with the reasonableness of governmental intrusion into a private individual's garbage and not the reasonableness of such intrusions by private individuals.

■ This court has previously held that the following six nonexclusive neutral criteria must be examined in order to determine whether Const. art. 1, § 7 provides greater protection of defendant's privacy interest than its federal counterpart:

> (1) the textual language; (2) differences in the texts; (3) constitutional history; (4) preexisting state law; (5) structural differences; and (6) matters of particular state or local concern.

*State v. Gunwall,* 106 Wn.2d 54, 58, 720 P.2d 808, 76 A.L.R.4th 517 (1986). The purpose of these factors is twofold: first, to lend assistance to counsel where briefing might be appropriately directed in cases in which independent state grounds are urged; and second, to help ensure that if the court does use independent state grounds in reaching its conclusion it will consider the six factors to the end that the decision shall be based on well founded legal reasons and not by merely substituting its own notion of justice for that of duly elected legislative bodies or the United States Supreme Court. *Gunwall,* at 62–63.

In *Gunwall,* we held that when police obtained the defendant's long distance telephone records by placing a pen register on her telephone without first obtaining a warrant, they unreasonably intruded into her private affairs under Const. art. 1, § 7. *Gunwall,* at 63. Since *Gunwall* involved comparing the same constitutional provisions as those to be examined here, we adopt its analysis of the first, second, third and fifth factors and examine only the fourth and sixth factors as they apply to this particular case.

Turning first to a consideration of preexisting state law, we note the Court of Appeals below partially based its decision to reverse the trial court on the grounds it found no preexisting state law governing privacy interests in garbage. *Boland,* at 662. We disagree. Defendant cites one local ordinance which requires him to place his trash cans in a location "where they will be convenient for the collector." *See* Port Townsend Municipal Ordinance 6.04.030. Moreover, a Seattle ordinance makes it unlawful for anyone other than the owner of the trash can, or one authorized by the owner to place objects in the can, to remove its contents *"except for collection."* (Italics ours.) SMC 21.36.100. Although the Court of Appeals correctly points out the Port Townsend ordinance was intended to protect the health of the general public rather than individual privacy interests in garbage, we find this irrelevant. One can reasonably infer from these ordinances that only trash collectors and not others will handle one's trash. It would be improper to require that in order to maintain a reasonable expectation of privacy in one's trash that the owner must forgo use of ordinary methods of trash collection. *See* Note, *California v. Greenwood: Supreme Court Decides To Keep the Fourth Amendment Out of the Trash,* 67 N.C.L. Rev. 1191, 1206 (1989). For purposes of our *Gunwall* analysis, we find the cited ordinances furnish the required support to review this case under independent state grounds.

Looking next to whether the privacy interest here is properly a matter of particular state interest or local concern, the Court of Appeals below also found this factor

lacking. *Boland,* at 663. Again we disagree. In *California v. Greenwood, supra,* the Supreme Court itself recognized the individual states' freedom to determine under independent state grounds whether a privacy right in garbage is reasonable. *Greenwood,* at 43. In fact, several states have decided the issue under independent state grounds and have found such a privacy interest exists. *See People v. Krivda,* 5 Cal. 3d 357, 486 P.2d 1262, 96 Cal. Rptr. 62 (1971), *vacated and remanded,* 409 U.S. 33 (1972), *reaffirmed,* 8 Cal. 3d 623, 504 P.2d 457, 105 Cal. Rptr. 521, *cert. denied,* 412 U.S. 919 (1973); *State v. Tanaka,* 67 Hawaii 658, 701 P.2d 1274 (1985); *Smith v. State,* 510 P.2d 793 (Alaska 1973) (although no privacy interest in garbage was found in this case, the court did hold that under more appropriate facts, such a right could be found). Having found the six *Gunwall* criteria fulfilled in this case, we now resort to an analysis of the issue on independent state grounds.

■ Const. art. 1, § 7 provides:

> No person shall be disturbed in his private affairs, or his home invaded, without authority of law.

Violation of a right of privacy under this provision turns on whether the State has unreasonably intruded into a person's "private affairs". *State v. Myrick,* 102 Wn.2d 506, 510, 688 P.2d 151 (1984) (citing *State v. Simpson,* 95 Wn.2d 170, 178, 622 P.2d 1199 (1980)). The difference between the right of privacy under Const. art. 1, § 7 and the Fourth Amendment has been explained as follows:

> Const. art. 1, § 7 analysis encompasses those legitimate privacy expectations protected by the Fourth Amendment, but is not confined to the subjective privacy expectations of modern citizens who, due to well publicized advances in surveillance technology, are learning to expect diminished privacy in many aspects of their lives. Rather, it focuses on those privacy interests which citizens of this state have held, and should be entitled to hold, safe from governmental trespass absent a warrant.

(Citations omitted.) *Myrick,* at 510–11.

We have held in the past that certain governmental intrusion does constitute a violation of an individual's private affairs under Const. art. 1, § 7. *See State v. Simpson,*

95 Wn.2d 170, 194, 622 P.2d 1199 (1980) (privacy interest found in jail property box which could not be searched without probable cause); *State v. Houser,* 95 Wn.2d 143, 156, 622 P.2d 1218 (1980) (absent manifest necessity, police officers barred from searching the locked trunk of an impounded vehicle in the course of an inventory search); *State v. Stroud,* 106 Wn.2d 144, 153, 720 P.2d 436 (1986) (reasonable expectation of privacy exists in a locked container located in a vehicle); *Seattle v. Mesiani,* 110 Wn.2d 454, 458, 755 P.2d 775 (1988) (stopping all vehicles at mandatory checkpoints to check whether drivers were intoxicated constituted an unreasonable intrusion into a person's private affairs).

■ We find under the facts of this case that defendant Boland's private affairs were unreasonably intruded upon by law enforcement officers when they removed the garbage from his trash can and transported it to the police station in order to make it available to state and federal narcotics agents. Boland's trash was in his can and sitting on the curb in expectation that it would be picked up by a licensed garbage collector. This leads us to the conclusion that it falls squarely within the contemplated meaning of a "private affair". While it may be true an expectation that children, scavengers, or snoops will not sift through one's garbage is unreasonable, average persons would find it reasonable to believe the garbage they place in their trash cans will be protected from warrantless governmental intrusion. In the words of the Hawaii Supreme Court:

> People reasonably believe that police will not indiscriminately rummage through their trash bags to discover their personal effects. Business records, bills, correspondence, magazines, tax records, and other telltale refuse can reveal much about a person's activities, associations, and beliefs.

*State v. Tanaka, supra* at 662.

Of course, we recognize the usual exceptions to the warrant requirement, such as plain view and exigency, also apply to garbage cans. However, we note in this case that the prosecutor conceded at oral argument that no attempt

to secure a warrant to search Boland's garbage was ever made.

In support of its argument against finding a privacy interest in defendant's garbage, the State urges us to adopt *State v. Fassler,* 108 Ariz. 586, 503 P.2d 807 (1972), wherein the Arizona Supreme Court held a search of trash cans left in an alleyway did not violate the defendant's Fourth Amendment rights. *Fassler,* at 592–93. Although Ariz. Const. art. 2, § 8 contains the same privacy language as Const. art. 1, § 7, the Arizona Supreme Court in *Fassler* based its holding on the Fourth Amendment rather than independent state grounds. For this reason, we decline to follow that case.

In *State v. Hempele,* 576 N.J. 182, 576 A.2d 793 (1990), the New Jersey Supreme Court held that while *California v. Greenwood,* 486 U.S. 35, 100 L. Ed. 2d 30, 108 S. Ct. 1625 (1988) clearly established no Fourth Amendment protection for garbage left on the curbside for collection, article 1, section 7 of the New Jersey Constitution, which has been interpreted as providing broader protection than its federal counterpart, does prohibit such searches. *Hempele,* at 195. *Hempele* involved two consolidated cases wherein police officers received information indicating the defendants were carrying on drug activities in their homes. *Hempele,* at 188. The officers conducted warrantless searches of the defendants' garbage in both cases and found evidence of drug activity. *Hempele,* at 189. The officers then secured search warrants for the defendants' homes based on the informants' tips and the evidence seized from the garbage. *Hempele,* at 189.

While there is an identical result in *Hempele* and this case, we note one important doctrinal difference. In the dissent in *Hempele,* Justice Garibaldi attacks the majority opinion on federalism grounds and argues that the test established under federal precedent more appropriately comports with the reasonable expectation of privacy that most New Jersey citizens have in their garbage than the test developed by the majority. *Hempele,* at 229 (Garibaldi,

J., dissenting). This argument has some merit in that the language of the Fourth Amendment and article 1, section 7 of the New Jersey Constitution are identical. The same argument, however, does not apply when comparing Washington's constitution and the Fourth Amendment. Under Const. art. 1, § 7, the focus is whether the "private affairs" of an individual have been unreasonably violated rather than whether a person's expectation of privacy is reasonable.

In rendering our opinion, we acknowledge that the United States Supreme Court has held to the contrary under the Fourth Amendment in *Greenwood*. We also recognize that the opinions of the Supreme Court, while not controlling on state courts construing their own constitutions, are nevertheless important guides on the subjects they squarely address. *State v. Gunwall, supra* at 60–61. However, we decline to follow federal precedent for two reasons. First, *Greenwood* is based in part on the fact the court felt society unwilling to accept as objectively reasonable a privacy expectation in garbage *left outside the curtilage of the home for collection.* As Chief Judge Alexander points out in his dissent below, this court has previously held the location of a search is indeterminative when inquiring into whether the State has unreasonably intruded into an individual's private affairs. *State v. Boland, supra* at 664–65 (Alexander, C.J., dissenting) (citing *State v. Myrick, supra*). Thus, the fact defendant placed his garbage at the curb rather than in his backyard has no bearing on whether an unreasonable intrusion into his *private affairs* occurred. Second, the reasoning upon which *Greenwood* is based conflicts directly with this court's interpretation of Const. art. 1, § 7. In explaining why society was unwilling to accept an expectation of privacy in garbage, the Supreme Court analogized to *Smith v. Maryland,* 442 U.S. 735, 61 L. Ed. 2d 220, 99 S. Ct. 2577 (1979), wherein the court held the Fourth Amendment did not prohibit the installation of a pen register at the telephone company for

the purpose of recording telephone numbers of a criminal suspect. *Smith,* at 743–44. The main reason for the court's conclusion was that a person voluntarily conveys the numbers to the telephone company, thereby losing all legitimate privacy expectations in the numbers. *Smith,* at 743–44. However, we held to the contrary in *Gunwall* when we stated:

> A telephone is a necessary component of modern life. It is a personal and business necessity indispensable to one's ability to effectively communicate in today's complex society. . . . The concomitant disclosure to the telephone company, for internal business purposes, of the numbers dialed by the telephone subscriber does not alter the caller's expectation of privacy and transpose it into an assumed risk of disclosure to the government.

*Gunwall,* at 67 (quoting *People v. Sporleder,* 666 P.2d 135, 141 (Colo. 1983)).

■ The same description equally applies to garbage collection. The proper and regulated collection of garbage, as evidenced by ordinances such as Port Townsend's (cited above), is as necessary to the proper functioning of modern society as is the telephone company. While a person must reasonably expect a licensed trash collector will remove the contents of his trash can, this expectation does not also infer an expectation of governmental intrusion. We therefore reverse the Court of Appeals.

Since we reverse the Court of Appeals, we must address whether exclusion of the evidence seized from defendant's home was the appropriate remedy in this case. In support of its argument against suppression, the State cites *State v. Bonds,* 98 Wn.2d 1, 653 P.2d 1024 (1982), *cert. denied,* 464 U.S. 831 (1983). In *Bonds,* we set out three primary objectives underlying the exclusionary rule:

> [F]irst, and most important, to protect privacy interests of individuals against unreasonable governmental intrusions; second, to deter the police from acting unlawfully in obtaining evidence; and third, to preserve the dignity of the judiciary by refusing to consider evidence which has been obtained through illegal means.

*Bonds*, at 12. The State argues these objectives have not been met in this case, and that by balancing these objectives against the violation which occurred, we should find in favor of reintroducing the fruits of the search of Boland's residence against him.

■ However, we also stated in *Bonds* that:

> [W]e do not intend to suggest that such a balancing should be carried out whenever the operation of the exclusionary rule is an issue. When evidence is obtained in violation of the defendant's constitutional immunity from unreasonable searches and seizures, there is no need to balance the particular circumstances and interests involved. Evidence obtained as a result of an unreasonable search or seizure must be suppressed.

(Citation omitted.) *Bonds*, at 11.

In *State v. White*, 97 Wn.2d 92, 640 P.2d 1061 (1982), we expressed the mandatory nature of the exclusionary rule in cases where a person's privacy rights under Const. art. 1, § 7 have been violated:

> We think the language of our state constitutional provision constitutes a mandate that the right of privacy shall not be diminished by the judicial gloss of a selectively applied exclusionary remedy. In other words, the emphasis is on protecting personal rights rather than on curbing governmental actions. This view toward protecting individual rights as a paramount concern is reflected in a line of Washington Supreme Court cases predating *Mapp v. Ohio*, 367 U.S. 643, 6 L. Ed. 2d 1081, 81 S. Ct. 1684, 84 A.L.R.2d 933 (1961), which first made the exclusionary rule applicable to the states. The important place of the right to privacy in Const. art. 1, § 7 seems to us to require that *whenever* the right is unreasonably violated, the remedy *must* follow.

(Citations and footnote omitted. Italics ours.) *White*, at 110.

By relying on the objectives set out in *Bonds*, the State misunderstands the application of the exclusionary rule in Washington. As *White* and *Bonds* make clear, violation of a constitutional immunity automatically implies exclusion of the evidence seized. For this reason, the objectives set out in *Bonds* are inapplicable in this case, and the trial court properly excluded the evidence seized from defendant's residence.

The State also urges us to consider abolishing the exclusionary rule in Washington. However, as we expressed in *White*, the exclusionary rule has existed in Washington since before the United States Supreme Court mandated its application to the states via *Mapp v. Ohio*, 367 U.S. 643, 6 L. Ed. 2d 1081, 81 S. Ct. 1684, 84 A.L.R.2d 933 (1961). We decline to abolish it now.

Reversed.

CALLOW, C.J., and UTTER, BRACHTENBACH, and SMITH, JJ., concur.

GUY, J. (dissenting)—I disagree that the factors set forth in *State v. Gunwall*, 106 Wn.2d 54, 720 P.2d 808, 76 A.L.R.4th 517 (1986) have been met. Therefore there is no basis upon which the majority can conclude that a broader interpretation of privacy rights under article 1, section 7 of the Washington State Constitution is warranted. Further, garbage placed outside the confines of one's property does not fall within the contemplated meaning of "private affairs". Const. art. 1, § 7. Finally, the practical effect of the majority's holding creates a new boundary for warrantless trash searches that is in reality a distinction without a difference. As such, it provides no additional constitutional protection than what was previously under the Fourth Amendment.

GUNWALL

This court has established six nonexclusive criteria to determine whether article 1, section 7 of our constitution provides greater protection to an individual than the Fourth Amendment. *See State v. Gunwall, supra.* Factor four requires a showing of previously established bodies of state law, including statutory law, that might bear on the granting of distinctive state constitutional rights. Such law may be responsive to concerns of its citizens long before they are addressed by analogous constitutional claims. *Gunwall*, at 61–62.

To satisfy this factor, the majority relies upon Port Townsend Municipal Ordinance 6.04.030, which requires that trash cans be placed in a location "where they will be convenient for the collector." Majority opinion, at 576. The majority also depends upon a Seattle ordinance that makes it unlawful for anyone other than the owner of the trash can, or one authorized by the owner to place objects in the can, to remove its contents "except for collection". *See* SMC 21.36.100; majority opinion, at 576. The majority concludes that these ordinances indicate an intent to recognize and to protect a privacy interest in trash even though it acknowledges the Port Townsend ordinance was intended to protect the health of the general public rather than establish a privacy interest for individuals in garbage. Majority opinion, at 576. The majority concludes that this distinction is *irrelevant*. Majority opinion, at 576.

This distinction is, in fact, of major relevance to resolution of the fourth factor. In *Gunwall*, the police obtained toll records and pen register tapes without a warrant. *Gunwall*, at 55–58. In concluding that greater protection under article 1, section 7 was warranted, this court found that Washington had a long history of protecting telephonic and other electronic communications. *Gunwall*, at 66. In particular, RCW 9.73.010 made it a misdemeanor for anyone wrongfully to obtain knowledge of a telegraphic message. This statute was enacted in 1909 and was based upon section 2342 of the Code of 1881. That code, adopted before statehood, extensively regulated telegraphic communications. *Gunwall*, at 66. In interpreting the statute, this court held that it was broad, detailed and extended considerably greater protection to our citizens than comparable federal statutes and rulings thereon. *Gunwall*, at 66 (citing *State v. O'Neill*, 103 Wn.2d 853, 700 P.2d 711 (1985)). Both the Legislature and the courts previously established a long history of protection for telephonic and other forms of electronic communications.

By contrast, it is unreasonable to hold that two local ordinances regulating the collection of trash, one of which

was intended to address public health safety, comprise a long preexisting history of protecting privacy interests in garbage. See majority opinion, at 576 (acknowledging the Port Townsend ordinance was intended to protect the health of the general public rather than individual privacy interests in garbage). Because these ordinances do not demonstrate a history of legislative or judicial protection of privacy interests in garbage, I would hold that the fourth *Gunwall* factor has not been met.

The sixth *Gunwall* factor addresses whether the subject matter is local in nature or whether there appears to be a need for national uniformity. *Gunwall*, at 62. Only the former may be more appropriately addressed by resort to our state constitution. *Gunwall*, at 62. The Supreme Court has recognized individual states' freedom to determine under independent state grounds whether a privacy interest in garbage is reasonable. Majority opinion, at 576 (citing *California v. Greenwood*, 486 U.S. 35, 100 L. Ed. 2d 30, 108 S. Ct. 1625 (1988)). The majority concludes that because California and Hawaii have found a privacy interest to exist in garbage, this indicates that the matter is of local concern. Majority opinion, at 577; *see also People v. Krivda*, 5 Cal. 3d 357, 486 P.2d 1262, 96 Cal. Rptr. 62 (1971), *vacated and remanded*, 409 U.S. 33 (1972), *reaffirmed*, 8 Cal. 3d 623, 504 P.2d 457, 105 Cal. Rptr. 521, *cert. denied*, 412 U.S. 919 (1973); *State v. Tanaka*, 67 Hawaii 658, 701 P.2d 1274 (1985).

The majority's focus is misplaced. In *Gunwall*, we stated that factor six overlapped criterion four, and to that extent the same discussion applied to both. *Gunwall*, at 67. In other words, we found that a prevailing history of state protection would lend credence to the conclusion that the matter at hand was of local concern. We then found the sixth factor satisfied, reasoning that the objective of national uniformity was outweighed by overwhelming *state* policy considerations to the contrary. The focus of our inquiry was twofold: determining what the State of Washington had done in protecting privacy interests without

resort to other states' treatment of the same issue; and balancing state, not local, policy considerations against an objective of national uniformity. *See Gunwall,* at 66–67.

In doing so, one can only conclude that the sixth factor has not been met. The majority has failed to provide one policy consideration that would weigh in favor of finding the privacy interest asserted in this case a matter of local concern. See majority opinion, at 576–77. Unlike *Gunwall,* there is no prior history of legislative or judicial protection of privacy interests in garbage. The two local ordinances upon which the majority relies cannot be characterized as reflecting State policy considerations that would sufficiently outweigh an objective of national uniformity.

Moreover, the majority's reliance upon other jurisdictions which have found a privacy interest on independent state grounds is tenuous at best. Majority opinion, at 576–77. If we are to rely upon other states' treatment of this issue, then the overwhelming majority of courts have held to the contrary. *See, e.g., Greenwood,* at 41–42 (citing *Commonwealth v. Chappee,* 397 Mass. 508, 512–13, 492 N.E.2d 719 (1986); *Cooks v. State,* 699 P.2d 653, 656 (Okla. Crim. App.), *cert. denied,* 474 U.S. 935 (1985); *State v. Stevens,* 123 Wis. 2d 303, 314–17, 367 N.W.2d 788, *cert. denied,* 474 U.S. 852 (1985); *State v. Ronngren,* 361 N.W.2d 224, 228–30 (N.D. 1985); *State v. Brown,* 20 Ohio App. 3d 36, 37–38, 484 N.E.2d 215 (1984); *State v. Oquist,* 327 N.W.2d 587 (Minn. 1982); *People v. Whotte,* 113 Mich. App. 12, 317 N.W.2d 266 (1982); *Commonwealth v. Minton,* 288 Pa. Super. 381, 391, 432 A.2d 212 (1981); *State v. Schultz,* 388 So. 2d 1326 (Fla. Dist. Ct. App. 1980); *People v. Huddleston,* 38 Ill. App. 3d 277, 347 N.E.2d 76 (1976); *Willis v. State,* 518 S.W.2d 247, 249 (Tex. Crim. App. 1975); *Smith v. State,* 510 P.2d 793 (Alaska), *cert. denied,* 414 U.S. 1086 (1973); *State v. Fassler,* 108 Ariz. 586, 592–93, 503 P.2d 807 (1972); *Croker v. State,* 477 P.2d 122, 125–26 (Wyo. 1970); *State v. Purvis,* 249 Or. 404, 411, 438 P.2d 1002 (1968)).

We have adopted the six nonexclusive factors in *Gunwall* to ensure that resort to independent state grounds will be

based upon *well founded legal reasons* and not by substitution of a court's own notion of justice for that of duly elected legislative bodies or the United States Supreme Court. *Gunwall,* 106 Wn.2d at 62–63; majority opinion, at 575. Resort to our state constitution must be derived from a process that is at once "articulable, *reasonable and reasoned.*" (Italics mine.) *Gunwall,* at 63. The majority's resolution of factors four and six frustrates the policy behind the adoption of the *Gunwall* criteria. I would hold that *Gunwall* has not been met. As such, there is no basis upon which to extend broader protection to garbage under article 1, section 7.

## "PRIVATE AFFAIRS" VS. GARBAGE

The majority fails to provide what the contemplated meaning of "private affairs" is and why it necessarily encompasses garbage. Yet it concludes that trash "falls squarely within the contemplated meaning of a 'private affair'" and finds a privacy interest to exist in garbage. Majority opinion, at 578. It bases this decision upon several cases establishing privacy interests in the area of search and seizure, none of which deals with garbage. It reasons that unlike the Fourth Amendment, which centers upon the subjective privacy expectations of citizens, article 1, section 7 focuses on those privacy interests which citizens of this state have held, and should be entitled to hold, safe from governmental trespass absent a warrant. Majority opinion, at 577 (citing *State v. Myrick,* 102 Wn.2d 506, 510–11, 688 P.2d 151 (1984)).

Notably, the majority provides no basis for concluding that there is a historical privacy interest in garbage that has been held by the citizens of our state. Nor is it abundantly clear that this court's recognition of privacy interests in other areas of search and seizure provide a sufficient basis for extending such an interest to garbage.

The relevant inquiry for determining when a search has occurred under article 1, section 7 is whether the State unreasonably intruded into the defendant's "private

affairs". *Myrick,* at 510 (citing *State v. Simpson,* 95 Wn.2d 170, 178, 622 P.2d 1199 (1980)). By contrast, the pertinent inquiry under the Fourth Amendment is whether there has been governmental intrusion into an individual's "'reasonable expectation of privacy.'" *Myrick,* at 510 (quoting *Katz v. United States,* 389 U.S. 347, 357, 19 L. Ed. 2d 576, 88 S. Ct. 507 (1967)). We have held this difference significant in determining whether an individual's privacy interests have been unconstitutionally violated. *See, e.g., Myrick,* at 510.

However, this difference in analyzing whether a violation has occurred does not determine that an alleged privacy interest would necessarily fall within the meaning of "private affairs" and thereby be constitutionally protected. To date, it appears we have not yet clarified what "private affairs" would entail. *See, e.g., Myrick,* at 510–11 (citing *State v. Simpson, supra*). One cannot legitimately conclude that an individual's private affairs have been unconstitutionally violated under article 1, section 7 until it has been determined that the privacy interest allegedly violated falls within the contemplated meaning of "private affairs".

In this regard, I believe the relevant inquiry would be the same as that of the Fourth Amendment. That is, whether the defendant possessed, from a societal perspective, an objectively reasonable expectation of privacy in that matter allegedly violated. *California v. Greenwood,* 486 U.S. 35, 39, 100 L. Ed. 2d 30, 108 S. Ct. 1625 (1988); *see also Myrick,* at 510 (*citing Katz,* at 357). To hold otherwise would permit individuals to assert as private any matter subjectively held to be so. It could hardly be seriously contended that our constitution allows for such a result.

When applied to Boland's case, the relevant inquiry would be whether his asserted expectation of privacy in his garbage is objectively reasonable from a societal perspective and, if so, whether the warrantless search was a violation of that interest.

In that regard, the Supreme Court has already answered these questions. *See California v. Greenwood, supra.* First, garbage left on or at the side of a public street is readily

accessible to animals, children, scavengers, snoops, and other members of the public. *Greenwood,* at 40 (citing *People v. Krivda,* 5 Cal. 3d at 367). Moreover, garbage is placed at the curb for the express purpose of conveying it to a third party, the trash collector, who might himself have sorted through the trash or permitted others, such as the police, to do so. *Greenwood,* at 40. Accordingly, having deposited garbage in an area particularly suited for public inspection, there could be no reasonable expectation of privacy in the inculpatory items discarded. *Greenwood,* at 40–41.

The majority dismisses this reasoning by arguing that the fundamental purpose of the constitution is to govern the relationship between the people and the government rather than the relationship between private parties. Majority opinion, at 575 (citing *Southcenter Joint Venture v. National Democratic Policy Comm.,* 113 Wn.2d 413, 780 P.2d 1282 (1989)). Thus, it concludes that the focus of inquiry should be the reasonableness of governmental intrusion into a private individual's garbage and not the reasonableness of such intrusions by private individuals. Majority opinion, at 575.

While this is undoubtedly true, the majority's focus is misplaced. The Court in *Greenwood* does not maintain that the constitution governs the rights of people vis–a–vis one another. Rather, the point made is one of logic and a fundamental precept of constitutional analysis. That is, there can be no legitimate expectation of privacy in a matter held out to the public. *Cf. Bedford v. Sugarman,* 112 Wn.2d 500, 512, 772 P.2d 486 (1989). Thus, it is difficult to understand how the majority can acknowledge there is no reasonable expectation that "children, scavengers, or snoops" will not sift through one's garbage, yet find it reasonable to expect that the government will not absent a warrant. Majority opinion, at 578. The majority offers no explanation to reconcile how this court legitimately can engage in this type of selective enforcement of constitutional principles.

The majority relies upon the holding of the Hawaii Supreme Court in *State v. Tanaka,* 67 Hawaii 658, 662, 701 P.2d 1274 (1985) as standing for the proposition that average persons would find a constitutionally protected privacy interest in garbage objectively reasonable. Majority opinion, at 578. To the contrary, an overwhelming majority of federal and state courts have held that society is not willing to accept as objectively reasonable an expectation of privacy in garbage left in an area accessible to the public. *Greenwood,* at 41 (citing, *e.g., United States v. Espriella,* 781 F.2d 1432, 1437 (9th Cir. 1986); *United States v. O'Bryant,* 775 F.2d 1528, 1533–34 (11th Cir. 1985); *United States v. Michaels,* 726 F.2d 1307, 1312–13 (8th Cir.), *cert. denied,* 469 U.S. 820 (1984); *United States v. Kramer,* 711 F.2d 789, 791–94 (7th Cir.), *cert. denied,* 464 U.S. 962 (1983); *United States v. Terry,* 702 F.2d 299, 308–09 (2d Cir.), *cert. denied sub nom. Williams v. United States,* 461 U.S. 931 (1983); *Commonwealth v. Chappee,* 397 Mass. 508, 512–13, 492 N.E.2d 719 (1986); *Cooks v. State,* 699 P.2d 653, 656 (Okla. Crim. App.), *cert. denied,* 474 U.S. 935 (1985); *State v. Stevens,* 123 Wis. 2d 303, 314–17, 367 N.W.2d 788, *cert. denied,* 474 U.S. 852 (1985); *State v. Ronngren,* 361 N.W.2d 224, 228–30 (N.D. 1985); *State v. Brown,* 20 Ohio App. 3d 36, 37–38, 484 N.E.2d 215 (1984); *State v. Oquist,* 327 N.W.2d 587 (Minn. 1982); *People v. Whotte,* 113 Mich. App. 12, 317 N.W.2d 266 (1982).

If we are to resort to other jurisdictions to conclude what the citizens of Washington would find objectively reasonable, then the overwhelming majority of state and federal courts dictate a result contrary to the majority's.

The majority, however, declines to follow federal precedent and distinguishes *Greenwood* and other similar cases for two reasons. First, *Greenwood* is based in part on the fact that the garbage was left outside the curtilage of the home. Majority opinion, at 580. The majority argues that this court has previously held the location of a search is indeterminative. Majority opinion, at 580 (citing *State v.*

*Boland,* 55 Wn. App. 657, 664–65, 781 P.2d 490 (1989) (Alexander, C.J., dissenting)).

Contrary to the majority's position, while stating that location was not dispositive, this court held it was a factor to be considered in determining the validity of the intrusion. *See State v. Myrick, supra.* Thus, it has direct bearing on whether an unreasonable intrusion into Boland's private affairs has occurred. See majority opinion, at 580. In this regard, *Greenwood's* conclusion that the trash was placed in an area accessible to the general public is of major relevance. *Greenwood,* at 40–41. Trash cans placed immediately adjacent to a home, in a place to which the general public is not invited, are within a constitutionally protected area as to which the homeowner may reasonably expect privacy from governmental intrusion. *See People v. Krivda,* at 368 (Wright, C.J., concurring and dissenting) (citing *Hoffa v. United States,* 385 U.S. 293, 301, 17 L. Ed. 2d 374, 87 S. Ct. 408 (1966)). That privacy, however, is inextricably bound up in the physical location of the trash cans. *Krivda,* at 368. It is inconceivable that article 1, section 7 of our constitution compels extending protection to garbage where it is placed adjacent to or on a public thoroughfare. *See Krivda,* at 368–69.

The majority also declines to apply *Greenwood* because it allegedly conflicts with this court's interpretations of Const. art. 1, § 7. Majority opinion, at 580. Specifically, the majority points to the fact that unlike our holding in *State v. Gunwall,* 106 Wn.2d 54, 720 P.2d 808, 76 A.L.R.4th 517 (1986), the Supreme Court has allowed the warrantless use of pen registers. Majority opinion, at 580 (citing *Smith v. Maryland,* 442 U.S. 735, 61 L. Ed. 2d 220, 99 S. Ct. 2577 (1979)).

In *Gunwall,* we stated that a telephone was a necessary component of modern life, indispensable to effective communication in today's complex society. *Gunwall,* at 67 (quoting *People v. Sporleder,* 666 P.2d 135, 141 (Colo. 1983)); majority opinion, at 581. Thus, we held that the concomitant disclosure to the telephone company for

"internal" business purposes does not alter a caller's expectation of privacy and transpose it into an assumed risk of disclosure to the government. *Gunwall*, at 67; majority opinion, at 581. The majority analogizes this rationale to garbage collection. Majority opinion, at 581.

While garbage collection may be considered necessary to the proper functioning of society, unlike *Gunwall*, the placement of trash in a publicly accessible area cannot legitimately be characterized as placement for an internal business or personal purpose. Moreover, one who discards his trash and places it at curbside to be picked up assumes the risk that the garbage collector may be an agent of the police or may permit the police to examine the unconglomerated trash once it is picked up. *Krivda*, at 369.

I find the rationale in *Greenwood* a logical application of constitutional principles to garbage placed in a public area and would apply it to Boland's case.

### DISTINCTION WITHOUT A DIFFERENCE

Assuming the majority's result is justified, the new constitutional parameter it draws provides no additional protection against the warrantless search of garbage than what was previously accorded under the Fourth Amendment. The majority concludes that garbage in the can retains a privacy interest requiring a search warrant. Majority opinion, at 578. The majority, however, does not require that once the trash is out of the can it be commingled before a warrantless search can occur. One could therefore reasonably conclude that once the garbage is in the collection bin of the truck, it loses its privacy interest or, at the very least, the privacy interest is diminished. Thus, the garbage could be searched without a warrant. Consequently, garbage collectors could be instructed to empty the truck's bin before picking up an individual's trash and then turn the contents over to the police.

This new boundary creates a distinction without a difference. Police merely have to wait until the trash is carried a

few feet further than the curb and is emptied into the collection bin of the garbage truck before engaging in a warrantless search. *See California v. Greenwood,* 486 U.S. 35, 37, 100 L. Ed. 2d 30, 108 S. Ct. 1625 (1988). This fruitless extension of the warrantless search boundary does nothing more than complicate an already complex area of law.

CONCLUSION

In interpreting the constitution, our primary objective has been to strike an acceptable balance between governmental and societal interests advanced to justify intrusions against constitutionally protected interests of the individual citizen in the privacy of his effects. *State v. Houser,* 95 Wn.2d 143, 157, 622 P.2d 1218 (1980). While we should not condone blatant misconduct by the government, we should not also restrict its ability to function, particularly where the police acted in good faith. The record discloses that the police in this case sought legal advice prior to the warrantless search. They acted in what they perceived to be a constitutionally permissible manner based upon that advice. Yet, the majority chooses to extend constitutional protection in this case beyond that previously required and, in effect, penalizes the police for their good faith, legitimate actions. Moreover, the practical effect of the majority's holding makes the obtaining of a warrant for trash extremely difficult, if not impossible. Because garbage is typically disposed of within the confines of one's home, there may never be a witness to discarded evidence. Without some indication that an individual's garbage potentially contains specific evidence, there would never be any basis for a warrant. I cannot accept this as an acceptable balancing of the prospective interests involved. Thus, I would affirm the Court of Appeals.

DORE, ANDERSEN, and DURHAM, JJ., concur with GUY, J.