[No. 22439-2-III.   Division Three.   February 15, 2005.]

THE STATE OF WASHINGTON, *Appellant*, v. THOMAS ALLEN SWEENEY, *Respondent*.

*Steven J. Tucker, Prosecuting Attorney*, and *Kevin M. Korsmo, Deputy*, for appellant.

*Douglas D. Phelps* (of *Phelps & Associates*), for respondent.

¶1 KURTZ, J. — A Spokane County detective instructed a municipal garbage collector to place Thomas A. Sweeney's garbage into an empty hopper and drive the garbage truck a few blocks away. There, the detective searched the garbage and found evidence used to obtain a search warrant for Mr. Sweeney's residence. Mr. Sweeney was charged with the manufacture of methamphetamine; but the trial court suppressed the evidence obtained from the search of the garbage and terminated the case. On appeal, the State contends Mr. Sweeney had no privacy right protecting garbage hauled away by the municipal refuse collection service. In response, Mr. Sweeney asserts law enforcement should not be allowed to circumvent constitutionally-protected privacy rights by using another governmental employee to collect garbage for a search. Relying upon *State v. Boland*, 115 Wn.2d 571, 800 P.2d 1112 (1990), we hold the search of Mr. Sweeney's garbage violated article I, section 7 of the Washington State Constitution and affirm.

## FACTS

¶2 Thomas Sweeney was charged with manufacturing methamphetamine while armed with a firearm. The charges arose after police served a warrant and discovered a methamphetamine laboratory in the closet of Mr. Sweeney's bedroom. The warrant was based on evidence uncovered during a search of Mr. Sweeney's garbage can.

¶3 The charges resulted from an investigation conducted by Detective David Knechtel of the Spokane County Sheriff's Department. As part of this investigation, Detective Knechtel contacted the city of Spokane Refuse Department and expressed his desire to obtain the garbage collected at Mr. Sweeney's address. The detective requested that this garbage be placed in an empty truck hopper so that he would be able to inspect the garbage.

¶4 Peter Borg, a city refuse collector, was assigned to assist the detective by obtaining the garbage to be searched. Mr. Borg usually worked as a floater, but on this date he was assigned to collect garbage from Mr. Sweeney's address and three other houses. Mr. Borg was instructed to use a semi-automated truck. This type of truck does not automatically mix all of the garbage; instead, the driver must push a lever. In contrast, the automated trucks automatically dump all collected garbage into a common container.

¶5 Accompanied by the detective, Mr. Borg collected the garbage from the first three houses near Mr. Sweeney's address. Mr. Borg was then instructed to clean out the hopper. With the hopper empty, Mr. Borg then picked up the garbage from Mr. Sweeney's address and dropped it into the hopper. The detective instructed Mr. Borg to drive the truck to the end of the block. Once there, Detective Knechtel searched through the garbage and removed several items. Contrary to department policy, Mr. Borg did not report the detective for going through the garbage, even though garbage collectors are routinely instructed to report persons who do so.

¶6 After Detective Knechtel went through the garbage, Mr. Borg cycled the remainder of the garbage into the truck's container and then went to his supervisor for his next job assignment. Mr. Borg did not complete the rest of the route by Mr. Sweeney's house but, instead, was sent out on a recycling route.

¶7 During his search of the garbage, Detective Knechtel found evidence of iodine, pseudoephedrine, and matchbooks with striker plates missing. Based on his training, Detective Knechtel believed this evidence indicated that Mr. Sweeney was manufacturing methamphetamine. Accordingly, a warrant was obtained to search Mr. Sweeney's residence.

¶8 At the suppression hearing, Mr. Sweeney argued that the warrantless search of the garbage was unlawful and that this unlawful search invalidated the subsequent search warrant issued for his residence. When the court

concluded that the search of the garbage was unlawful, the court entered an order terminating the case. The State appeals.

## ANALYSIS

■ ¶9 Article I, section 7 of the Washington State Constitution provides that: "No person shall be disturbed in his private affairs, or his home invaded, without authority of law." Consequently, when considering an alleged violation of a privacy interest, Washington courts ask whether the State has unreasonably intruded into a person's private affairs. *State v. Myrick*, 102 Wn.2d 506, 510, 688 P.2d 151 (1984). In addressing this question, the court must consider the person's subjective expectation of privacy and whether this expectation is one that a citizen of this state is entitled to hold. *In re Pers. Restraint of Maxfield*, 133 Wn.2d 332, 339, 945 P.2d 196 (1997) (quoting *City of Seattle v. McCready*, 123 Wn.2d 260, 270, 868 P.2d 134 (1994)).

■ ¶10 The issue here is whether an individual has a privacy interest in garbage collected from the curb by a municipal garbage collector that is intentionally kept separate from other garbage on the collection route and then immediately made available for law enforcement to search. The seminal Washington case discussing an individual's privacy interest in garbage placed by the curb is *State v. Boland*, 115 Wn.2d 571, 800 P.2d 1112 (1990).

¶11 In *Boland*, the Washington Supreme Court held that Washington Constitution article I, section 7 provides greater protection of a person's privacy interest in his or her garbage than its federal counterpart, the Fourth Amendment. 115 Wn.2d at 577. Mr. Boland placed his garbage in a covered container for collection at the curb. On four occasions, police officers came to the Boland residence at night and emptied the contents of the garbage can into a plastic bag and took the contents to the police station. Based on the evidence obtained from the collected garbage, police obtained a search warrant for Mr. Boland's residence. *Id.* at 573-74.

¶12 The *Boland* court concluded that, under these facts, law enforcement had unreasonably intruded on Mr. Boland's private affairs. The court concluded that "average persons would find it reasonable to believe the garbage they place in their trash cans will be protected from warrantless governmental intrusion." *Id.* at 578. The court further noted that Mr. Boland's trash "was in his can and sitting on the curb in expectation that it would be picked up by a licensed garbage collector." *Id.* Significantly, the court determined that this fact "leads us to the conclusion that it falls squarely within the contemplated meaning of a 'private affair.' " *Id.* Furthermore, the court concluded that the usual exceptions to the warrant requirement—plain view and exigency—also applied to garbage cans. *Id.*

¶13 Here, Mr. Sweeney placed his garbage in a covered can at his curb. And, like Mr. Boland, Mr. Sweeney had the reasonable expectation that his garbage would be collected by a licensed garbage collector.

¶14 The State argues that Mr. Sweeney had no privacy interest in the garbage once it was collected from his curb by a licensed garbage collector. In other words, the State asserts that the court need not make an inquiry into the defendant's expectation because the privacy interest attaches to the garbage and ceases to exist once the garbage is collected. To support this argument, the State relies on two Division Three cases, *State v. Rodriguez*, 65 Wn. App. 409, 828 P.2d 636 (1992), and *State v. Hepton*, 113 Wn. App. 673, 54 P.3d 233 (2002), *review denied*, 149 Wn.2d 1018 (2003); and language in the *Boland* dissent.

¶15 *Rodriguez* and *Hepton* are distinguishable. In *Rodriguez*, this court concluded that Mr. Rodriguez had no privacy interest in garbage placed in the community dumpster serving his apartment complex. *Rodriguez*, 65 Wn. App. at 418-19. Similarly, this court concluded that Mr. Hepton had no privacy interest in garbage he placed on a neighbor's property. *Hepton*, 113 Wn. App. at 680.

¶16 In the *Boland* dissent, the minority read the majority's decision to conclude that "garbage in the can retains a

privacy interest requiring a search warrant." *Boland*, 115 Wn.2d at 592 (Guy, J., dissenting). The minority also concluded that the majority decision "does not require that once the trash is out of the can it be commingled before a warrantless search can occur." *Id.* Accordingly, the minority reasoned that the majority decision created a distinction where "[p]olice merely have to wait until the trash is carried a few feet further than the curb and is emptied into the collection bin of the garbage truck before engaging in a warrantless search." *Id.* at 592-93.

¶17 We believe the *Boland* minority mischaracterizes the majority opinion. The majority opinion, applying Washington law, focused on the citizen's expectation of privacy and the reasonableness of the governmental intrusion into Mr. Boland's private affairs. The majority opinion should not be read as a statement that this privacy interest attaches to the garbage and then ceases to exist once the garbage is placed in the can. Moreover, the *Boland* majority did not consider the issue of commingling or the question as to the nature of a warrantless search after the garbage is collected by a garbage collector.

¶18 This reading of *Boland* is supported by a Division One case, *State v. Graffius*, 74 Wn. App. 23, 871 P.2d 1115 (1994). In *Graffius*, the court concluded that a police officer's intentional look into a partially-open garbage can placed on the curtilage was not an unreasonable intrusion into Mr. Graffius's privacy. The court did not limit its inquiry to the question of whether Mr. Graffius had placed his garbage in the can. Instead, the court examined whether the officer had legitimate business to enter the curtilage and whether the items discovered were in plain view. *Id.* at 31. *Graffius*, like *Boland*, demonstrates that the privacy right at issue here must be evaluated in terms of the reasonableness of the expectation of privacy and the reasonableness of the governmental intrusion. Accordingly, this privacy right is not limited by the location of the garbage or the act of placing the garbage in the can.

¶19 We need not address the questions associated with the commingling of garbage after it is taken from the curb because Mr. Sweeney's garbage was not commingled with other garbage. Here, Mr. Sweeney had a reasonable expectation that his garbage would be collected from his curb, mixed with other garbage, and taken to a refuse facility. He did not have an expectation that his garbage would be collected separately, taken a block away, and made available for inspection by a law enforcement officer. Applying *Boland* to the facts here, there was an unreasonable intrusion by the government into Mr. Sweeney's private affairs.

¶20 We affirm the judgment of the trial court.

KATO, C.J., and BROWN, J., concur.

Review denied at 155 Wn.2d 1012 (2005).