[No. 25242-2-II.   Division Two.   July 20, 2001.]

THE STATE OF WASHINGTON, *Respondent,* v. SCOTT LEE SPANDEL, *Appellant.*

*Mary Katherine Young High*, for appellant (appointed counsel for appeal).

*Scott Spandel*, pro se.

*Gerald A. Horne, Prosecuting Attorney*, and *Kathleen Proctor, Deputy*, for respondent.

SEINFELD, J. — Scott Spandel appeals his conviction and sentence for first degree robbery. He asserts prosecutorial misconduct in closing argument, sentencing error, and, in a pro se brief, ineffective assistance of counsel. Finding no error, we affirm.

## FACTS

According to the testimony of Ericka Raboteau and Aaron Foushee, on May 2, 1999, Spandel, Raboteau, and Chad Hess took drugs (LSD), a backpack, some CD's (compact discs), and approximately $40 from Foushee by force. They testified that Hess displayed a knife over three inches in length during the robbery and that Spandel displayed a sawed-off shotgun and kicked Foushee in the face.

Foushee testified that the police promised they would not charge him with dealing or possessing drugs if he testified against Spandel. Raboteau testified that in exchange for her testimony, the prosecutor reduced the first degree robbery charge against her to first degree theft. Both Foushee and Raboteau testified that they had known each other for several years and had dated in the past.

On the second day of trial, the State called Hess, who testified that Spandel was not present during the robbery. But the State impeached Hess' testimony by introducing his earlier statements to the police in which he told the police that Spandel had been present at the robbery and had brandished a fake gun. Hess testified that he initially implicated Spandel to avoid being arrested, but later, when he pleaded guilty to the robbery, he asserted that Spandel had not been at the crime scene.

Following Hess' testimony, Spandel's counsel notified the court that he could not locate two of Spandel's three alibi witnesses. He also informed the court that the third witness, Daniel Laughlin, had been served with a subpoena but was not in court and that he had been unable to contact Laughlin at work.

Spandel's counsel told the trial court that Laughlin was the only witness out of approximately a dozen potential witnesses he had interviewed who had an adequate recollection of May 2 and could corroborate Spandel's alibi. He requested that the trial court allow him to call Laughlin as the first witness the next day. The trial court offered to secure Laughlin's presence by arresting him and detaining

him overnight. Spandel's counsel said he would try to contact Laughlin and inform him that he needed to appear the next day and that if he did not appear, the trial court would issue an arrest warrant.

After the State rested, Spandel testified that he was at home caring for his invalid mother on May 2. He testified that he was his mother's sole care provider from November 1998 until his arrest, that the State paid him for this service, and that no one else lived in their home during that time.

At the close of testimony that day, the trial court and the parties discussed the "witness situation" off the record. Laughlin did not testify the following day, nor did Spandel's counsel raise the subject of alibi witnesses again.

On the third day of trial, the State called Tiffany Eckles to rebut Spandel's testimony. Eckles testified that she was a paid care provider from Pierce County Human Services and shared the responsibility of caring for Mrs. Spandel with Spandel. She testified that she began caring for Mrs. Spandel in February or March 1999, that she had resided in the Spandel home since that time, and that the State had not paid Spandel to care for his mother since she became Mrs. Spandel's caregiver earlier that year.

Eckles testified that she and Spandel alternated caring for Mrs. Spandel two days on and two days off. Eckles indicated that she was not at the residence on May 12 when the police arrested Spandel, but neither counsel asked her if she was there on May 2. She also said that Spandel had contacted her and told her that she did not have to testify unless she had received a subpoena.

The prosecutor made the following closing argument:

> What is credible is that Scott Spandel went there with Chad Hess, with Ericka Raboteau. Scott Spandel had a shotgun. Chad Hess had a knife, and they, by force or threat of force, took property from Aaron Foushee, and that's a robbery.
>
> Let's look finally at the testimony of the defendant. The defendant said, "I wasn't there. I don't know Ericka. I don't

know Aaron. I know Chad a little bit. But I wasn't there. I was busy at my State job taking care of my mother, of my disabled mother, cooking her breakfast, cooking her lunch and helping her 24-7 every day. I am her only care giver. I am completely responsible for her."

That was his testimony, and I submit to you that that testimony is not credible.

And make no mistake about who bears the burden in this case. The State does. The defendant doesn't have any obligation whatsoever to testify or present any evidence of any kind, no obligation. But once he does, once a defendant takes the stand, once the defendant puts on evidence for your consideration, once he decides to testify, you subject his testimony and his evidence to the same scrutiny as the State's evidence. The defendant gets the same scrutiny as the State does when he presents evidence.

His testimony is not credible. He is not his mother's paid care giver and he hasn't been all year. And he wasn't taking care of her on May 2nd. He wasn't there fixing her breakfast and lunch and helping her to the bathroom on May 2nd. Her care giver, Tiffany Eckles, who's an employee, who lives on the premises, was there.

Report of Proceedings (RP) at 229-30. Spandel's counsel did not object to any portion of the State's closing and did not argue Spandel's alibi defense in his closing argument.

The jury found Spandel guilty of first degree robbery and second degree assault but the trial court vacated the assault charge. It then sentenced Spandel to 75 months and imposed consecutive 60-month firearm and 24-month nonfirearm deadly weapon enhancements, for a total sentence of 159 months.

## WEAPON ENHANCEMENT STATUTE

Spandel argues that RCW 9.94A.310, the weapon enhancement statute, is ambiguous as to whether multiple weapon enhancements related to a single underlying offense may run consecutively to each other. Based on this alleged ambiguity, he contends the rule of lenity mandates

that the trial court run his multiple sentencing enhancements concurrently.

RCW 9.94A.310(3)[1] states in part: "If the offender is being sentenced for more than one offense, the firearm enhancement or enhancements must be added to the total period of confinement for all offenses, regardless of which underlying offense is subject to a firearm enhancement." RCW 9.94A.310(4) contains an identical clause regarding nonfirearm deadly weapon enhancements.

RCW 9.94A.310(3)(e) provides in part: "Notwithstanding any other provision of law, all firearm enhancements under this section . . . shall run consecutively to all other sentencing provisions, including other firearm or deadly weapon enhancements, for all offenses sentenced under this chapter." RCW 9.94A.310(4)(e) contains an identical clause regarding nonfirearm deadly weapon enhancements.

Spandel argues that the following clauses are ambiguous when read together: (1) "[i]f the offender is being sentenced for more than one offense, the [firearm or deadly weapon] enhancement or enhancements must be added to the total period of confinement for all offenses," RCW 9.94A.310(3) and (4); and (2) "for all offenses sentenced under this chapter," RCW 9.94A.310(3)(e) and (4)(e). He contends these clauses could reasonably be interpreted as implying that only weapon enhancements related to multiple offenses must run consecutively. Appellant Opening Br. (AOB) at 7.

Spandel asserts that if the Legislature intended multiple enhancements on a single underlying offense to run consecutively, it had the opportunity to clarify this when it amended the statute in 1998 by omitting any reference to "multiple *offenses*" in RCW 9.94A.310(3) and (4) and by clearly mandating consecutive enhancements in the absence of multiple offenses. AOB at 8. He further asserts that the two weapon enhancements are part of the same crimi-

---

[1] The Legislature amended RCW 9.94A.310 in 1999 and 2000. As these amendments made no substantive changes, all citations are to the current version of the statute unless otherwise specified.

nal conduct and, thus, should merge under RCW 9.94A.400.

The State responds that RCW 9.94A.310 clearly requires that all weapon enhancements run consecutively to each other regardless of the number of underlying offenses. It also contends that RCW 9.94A.400 is inapplicable because it applies only when the sentence involves multiple offenses rather than multiple enhancements. We agree.

Statutory interpretation is a question of law which we review de novo. *State v. Bright*, 129 Wn.2d 257, 265, 916 P.2d 922 (1996). Our goal is to identify and then give effect to the Legislature's intent in drafting the statute. *Bright*, 129 Wn.2d at 265. But a statute is not subject to judicial interpretation where its language is "plain, unambiguous, and well understood according to its natural and ordinary sense and meaning." *State v. Thorne*, 129 Wn.2d 736, 762, 921 P.2d 514 (1996).

We interpret an ambiguous statute so as to favor the defendant. *See State v. Roberts*, 117 Wn.2d 576, 586, 817 P.2d 855 (1991). But the plain language of the subsections at issue here is not ambiguous and, thus, the rule of lenity does not apply here. *State v. Lively*, 130 Wn.2d 1, 14, 921 P.2d 1035 (1996).

First, the clause from RCW 9.94A.310(3) and (4) that refers to multiple offenses applies *only* when the trial court is sentencing the offender for more than one offense. Because Spandel's sentence relates to one offense only, this clause does not apply and cannot create ambiguity.

Further, the plain language of RCW 9.94A.310(3)(e) and (4)(e) is clear. These subsections provide that *all* deadly weapon or firearm enhancements shall run *consecutively* to all other sentencing provisions *including other firearm or deadly weapon enhancements* for *all* offenses sentenced under chapter 9.94A RCW. RCW 9.94A.310(3)(e), (4)(e). The subsections do not limit the application of this rule to enhancements on separate underlying offenses. If the Legislature intended to restrict the application of RCW 9.94A.310(3)(e) and (4)(e) to situations involving more than

one underlying offense, it clearly could do so, as RCW 9.94A.310(3) and (4) demonstrate.

Spandel also suggests that the language of RCW 9.94A.310 contains an ambiguity similar to the ambiguity that existed in former RCW 9.94A.310(3)(e) (1997). Again, this argument is not persuasive.

Former RCW 9.94A.310(3)(e) read: "Notwithstanding any other provision of law, any and all firearm enhancements under this section are mandatory, shall be served in total confinement, and shall not run concurrently with any other sentencing provisions." The Washington Supreme Court determined that the phrase "other sentencing provisions" was ambiguous, making it unclear as to whether weapon enhancements should run consecutively to other enhancements. *In re Post Sentencing Review of Charles*, 135 Wn.2d 239, 250, 955 P.2d 798 (1998).

The *Charles* court concluded that under the rule of lenity, the enhancements were not "other sentencing provisions" and, thus, they did not run consecutively to other enhancements unless the underlying sentences ran consecutively to each other. 135 Wn.2d at 253-54. The Legislature later amended RCW 9.94A.310 to clarify that the enhancements ran consecutively to each other regardless of whether the base sentences ran consecutively. *See Charles*, 135 Wn.2d at 255 n.7. *See also* ESB 5695, 55th Leg., Reg. Sess. (Wash. 1998).

Unlike the statutory language at issue in *Charles*, the language of RCW 9.94A.310(3)(e) and (4)(e) is not ambiguous and the rule of lenity does not apply. Again, the plain language of the current subsections establishes that they apply to *all* firearm and deadly weapon enhancements and that these enhancements are to run consecutively to *other enhancements* related to *all* offenses.

■■ Further, in contrast to *Charles*, there is no ambiguity as to whether to apply RCW 9.94A.310 or RCW 9.94A.400. RCW 9.94A.400 does not apply here because the trial court did not sentence Spandel on two or more current

offenses. *See* RCW 9.94A.400(1)(a).[2] And Spandel's argument that we should apply the merger doctrine lacks merit as that doctrine applies to crimes or offenses, not weapon enhancements. *See State v. Vladovic*, 99 Wn.2d 413, 420-21, 662 P.2d 853 (1983).

We also note that imposing two consecutive weapon enhancements is particularly appropriate in this case. RCW 9.94A.310(3) and (4) provide that the weapon enhancements apply if the defendant *or* an accomplice was armed.[3] Where, as here, both the principal and the accomplice were armed, imposing two enhancements furthers the statutory purpose of increasing the punishment where numerous weapons increase the risk of serious harm.

Although RCW 9.94A.310 does not specifically state that all enhancements on a single underlying offense must run consecutively, RCW 9.94A.310(3)(e) and (4)(e) make it clear that *all* enhancements must run consecutively to each other. The plain language of RCW 9.94A.310(3)(e) and (4)(e) does not differentiate between circumstances where there are multiple underlying offenses and those where there is only one underlying offense. Thus, the trial court did not err when it imposed consecutive enhancements.

A majority of the panel having determined that only the foregoing portion of this opinion will be printed in the Washington Appellate Reports and that the remainder

---

[2] RCW 9.94A.400(1)(a) provides in part:

Except as provided in (b) or (c) of this subsection, *whenever a person is to be sentenced for two or more current offenses*, the sentence range for each current offense shall be determined by using all other current and prior convictions as *if they were prior convictions* for the purpose of the offender score: PROVIDED, That if the court enters a finding that some or all of the current *offenses* encompass the same criminal conduct then those current offenses shall be counted as one crime. Sentences imposed under this subsection shall be served concurrently. Consecutive sentences may only be imposed under the exceptional sentence provisions of RCW 9.94A.390. "Same criminal conduct," as used in this subsection, means two or more *crimes* that require the same criminal intent, are committed at the same time and place, and involve the same victim.

(Emphasis added.)

[3] "The following additional times shall be added to the presumptive sentence . . . if the offender or an accomplice was armed with a [firearm or deadly weapon.]" RCW 9.94A.310(3), (4).

shall be filed for public record pursuant to RCW 2.06.040, it is so ordered.

HUNT, A.C.J., and BRIDGEWATER, J., concur.

Review denied at 145 Wn.2d 1013 (2001).