54 P.3d 233 (2002)
STATE of Washington, Respondent and Cross-Appellant,
v.
Craig James HEPTON, Appellant.
No. 20127-9-III.
Court of Appeals of Washington, Division 3, Panel Two.
September 26, 2002.
*236 William D. Edelblute, Spokane, WA, for Appellant.
Kevin M. Korsmo, Deputy Prosecuting Attorney, Spokane, WA, for Respondent. *234
*235 SCHULTHEIS, J.
Evidence discovered in and around a garbage can next to an abandoned house was used to obtain a warrant to search the house next door for evidence of methamphetamine manufacture. Subsequently, Craig Hepton was charged with one count of manufacturing a controlled substance while minors were present, one count of first degree reckless burning, and five counts of second degree criminal mistreatment.
A jury found Mr. Hepton guilty of the manufacturing and reckless burning charges. On appeal, he contends all evidence obtained after the warrantless search of the garbage can area should have been excluded. Further, he contends the evidence is insufficient to support the charges, the trial court erred in failing to give a unanimity instruction, his statements to police were involuntary, and the trial court improperly admitted statements regarding prior criminal acts. The State cross-appeals the trial court's refusal to submit five child endangerment enhancement special verdict forms to the jury.
We find that Mr. Hepton had no privacy interest in the garbage, that the evidence is sufficient to support the verdict, and that the trial court's other challenged actions were not error. Additionally, we find that the child endangerment enhancement statutes, RCW 9.94A.510 and .605, do not authorize multiple enhancements for a single controlled substance offense. Consequently, we affirm.

FACTS
Mandi Ratliff lived with her five children, ages 3 months to 10 years, in a rental house at 912 E. Desmet in Spokane. Her friend, Carey Stuhlmiller, lived in the basement with Mr. Hepton. The house next door, at 908 E. Desmet, was abandoned and boarded up due to a previous fire.
Early in the morning of October 10, 2000, Ms. Ratliff's basement caught on fire. Ms. Ratliff was not present at the time, and Ms. Stuhlmiller and Mr. Hepton helped the four older children escape. The three-month-old baby remained in the house and was later rescued by fire fighters. Although the child survived, she has continuing disabilities.
After the fire was extinguished, fire investigators found a two-burner hotplate in the basement next to a glass beaker containing a red residue. They also found drug paraphernalia near the hotplate, including syringes. One investigator noticed a can of starter fluid near the outdoor basement entrance. He returned a few days laterwithout a warrant to see if the starter fluid was evidence of methamphetamine manufacture. Because the starter fluid was no longer outside the basement, the investigator decided to check a garbage can he found next to the abandoned house at 908 E. Desmet. Plastic garbage bags were lying on the ground near the garbage can. Inside the garbage can, the investigator found a can of starter fluid with holes punched in the bottom. He found over 20 boxes of pseudoephedrine in the garbage bags. A letter in the garbage can was addressed to Ms. Ratliff.
Pseudoephedrine tablets and ether drained from the bottom of starter fluid cans are *237 components in the manufacture of methamphetamine. Based on this evidence and the additional evidence found during the initial fire investigation, the district court issued a search warrant for Ms. Ratliff's premises. Officers subsequently found additional evidence of methamphetamine manufacture in the basement, including coffee filters containing a red substance believed to be red phosphorus, lye, a turkey baster, and a syringe containing a tan substance. The tan substance tested positive for methamphetamine.
Mr. Hepton was charged with one count of the manufacture of a controlled substance while minors were present (RCW 69.50.401(a); 69.50.440; former 9.94A.128 (2000)), one count of first degree reckless burning (RCW 9A.48.040), and five counts of second degree criminal mistreatment of Ms. Ratliff's children (RCW 9A.42.030). His out of court statements and the evidence discovered in the warrantless search of the garbage were admitted following CrR 3.5 (admission of a confession) and CrR 3.6 (admission of physical, oral, or identification evidence) hearings.
Trial was before a jury. After the State rested its case, Mr. Hepton unsuccessfully moved to dismiss for lack of evidence. The jury found Mr. Hepton not guilty of the criminal mistreatment charges, but guilty of the manufacturing and reckless burning charges. The State's attempt to add a 24-month child endangerment sentencing enhancement for each of Ms. Ratliff's five children was rejected by the court and is challenged on cross-appeal. RCW 9.94A.510(6); RCW 9.94A.605.

WARRANTLESS SEARCH OF GARBAGE LEFT AT AN ABANDONED HOUSE
Mr. Hepton first contends the warrantless search of the garbage can and bags found at the abandoned house next door to his residence was unconstitutional. He argues that he and the other occupants of his household used the garbage receptacles and consequently had a privacy interest in them. Because he does not assign error to the trial court's CrR 3.6 findings of fact, our review is de novo. State v. O'Cain, 108 Wash.App. 542, 547-48, 31 P.3d 733 (2001).
Under the Fourth Amendment to the United States Constitution, a person has no reasonable expectation of privacy in garbage that has been moved outside the curtilage of his or her home. California v. Greenwood, 486 U.S. 35, 37, 108 S.Ct. 1625, 100 L.Ed.2d 30 (1988). Because he recognizes that the federal constitution provides no protection for privacy rights in garbage found next door to his residence, Mr. Hepton confines his argument to state constitutional law.
Article I, section 7 of the Washington Constitution provides that "[n]o person shall be disturbed in his private affairs, or his home invaded, without authority of law." Thus, violation of this provision turns on whether the State has unreasonably intruded into a person's private affairs. State v. Goucher, 124 Wash.2d 778, 782, 881 P.2d 210 (1994). In State v. Boland, 115 Wash.2d 571, 577, 800 P.2d 1112 (1990), the Washington Supreme Court examined the six criteria of State v. Gunwall, 106 Wash.2d 54, 58, 720 P.2d 808 (1986), and held that Washington Constitution article I, section 7 provides greater protection of a defendant's privacy interest in his or her garbage than its federal counterpart. The garbage in Boland was held in a closed garbage container that had been placed on the curb outside the defendant's curtilage for pickup. Noting that a Seattle ordinance makes it unlawful for anyone other than the owner of the garbage can to remove its contents except for collection, the court held that this preexisting ordinance governed the privacy interests of garbage placed in a location for pickup by the city collector. Boland, 115 Wash.2d at 576, 800 P.2d 1112.
In contrast, the garbage here had not been placed in a receptacle owned by Mr. Hepton or by any other occupants of Ms. Ratliff's house. A Spokane Municipal Code (SMC) provision prohibits any person from placing materials in or around a garbage receptacle other than "the owner or occupant of the premises for who the service arrangements have been made." SMC 13.02.0218. Mr. Hepton contends the occupants of Ms. Ratliff's house used the garbage can next door but paid for the service to their premises, *238 thus creating a privacy interest in the garbage can wherever it was placed. The record shows that the house at 908 E. Desmet had not had garbage service since 1998, while Ms. Ratliff's house did have garbage service. On the other hand, none of the occupants of Ms. Ratliff's house were aware that they had garbage service and did not know who was paying for it. Ms. Ratliff rented the house from Spokane Neighborhood Action Programs (SNAP), a nonprofit organization that provides affordable rental properties to low income households. Unknown to Ms. Ratliff, SNAP was paying for her garbage service.
In determining whether a privacy interest exists under article I, section 7, we must ask not only what a person's subjective expectation of privacy is, but also whether that expectation is one that a citizen of this state is entitled to hold. In re Pers. Restraint of Maxfield, 133 Wash.2d 332, 339, 945 P.2d 196 (1997). A private affairs interest is an object or a matter personal to an individual such that any intrusion on it would offend a reasonable person. Goucher, 124 Wash.2d at 784, 881 P.2d 210. As far as the occupants of Ms. Ratliff's house knew, they were getting free garbage service by leaving their garbage in the next door neighbor's garbage can. On both a subjective and an objective level, Mr. Hepton neither had nor could reasonably expect to have the right to use the garbage can located next door.[1] Consequently, he had no privacy interest in the next door neighbor's garbage can.
The second component of the inquiry into possible article I, section 7 violations is whether the State unreasonably intruded. Boland, 115 Wash.2d at 577, 800 P.2d 1112. Even if the occupants of Ms. Ratliff's house exclusively used the next door neighbor's garbage can and paid for garbage service, no investigator could be reasonably expected to know that information. Garbage discovered on unoccupied premises could have been left there by anyone. Such garbage is in effect abandoned. Consequently, a police investigation into materials apparently dumped on unoccupied property is not an unreasonable intrusion. Because the investigator here did not unreasonably intrude by examining the garbage found at the next door neighbor's house, and because Mr. Hepton had no privacy interest in the neighbor's garbage can, the investigation did not constitute a search that violated article I, section 7. Goucher, 124 Wash.2d at 783-84, 881 P.2d 210. The evidence discovered in the garbage was properly considered by the court as a basis for issuing the search warrant.

SUFFICIENCY OF THE EVIDENCE
Mr. Hepton next challenges the sufficiency of the evidence to support his convictions for manufacturing methamphetamine and for reckless burning. He contends he did not complete manufacture of the methamphetamine and therefore should have been charged with attempt. Additionally, he contends the State failed to prove that he knowingly caused the fire. We view the evidence in the light most favorable to the State and ask whether any rational trier of fact could have found guilt beyond a reasonable doubt. State v. Todd, 101 Wash.App. 945, 950, 6 P.3d 86 (2000).
I. Manufacture of Methamphetamine. Mr. Hepton was charged with the manufacture of a controlled substance, in this case, methamphetamine. RCW 69.50.401(a). Manufacture is defined in part by statute as "the production, preparation, propagation, compounding, conversion, or processing of a controlled substance, either directly or indirectly." RCW 69.50.101(p). A controlled substance is any "drug, substance, or immediate precursor included in Schedules I through V." RCW 69.50.101(d). Mr. Hepton contends the substance contained in the beaker was not yet methamphetamine. Consequently, he argues, the evidence indicates he only attempted to manufacture methamphetamine.
At trial, the State presented an expert's testimony describing the red phosphorus method of manufacturing methamphetamine.
*239 Briefly, the process involves three general steps: (1) extracting pseudoephedrine from cold tablets; (2) mixing the pseudoephedrine with red phosphorus (obtained from matchbook covers) and iodine, cooking it for several hours, filtering it, adding lye to decrease its acidity, and adding organic solventslike etherto draw the methamphetamine out of the compound; and (3) extracting crystals from the liquid methamphetamine mixture by bubbling hydrochloride gas through the liquid. The only ingredient involved in this process that was not found in the basement area was iodine. In a statement to police, however, Mr. Hepton admitted that he had bought and used iodine a few days before the fire and had completed the manufacturing process through the second step when the beaker full of methamphetamine-laced ether exploded. Equipment associated with the manufacture of methamphetamine was discovered in the basement where Mr. Hepton resided, including a beaker with a red stain consistent with phosphorus, coffee filters, and a hot plate.
Criminal attempt is an act that is a substantial step toward the commission of an intended crime. RCW 9A.28.020(1). The wealth of evidence here that Mr. Hepton had produced liquid methamphetamine indicates far more than a substantial step toward the manufacture of methamphetamine. The plain language of RCW 69.50.101 provides that preparation or processing of a controlled substance or its immediate precursor constitutes manufacture of a controlled substance. RCW 69.50.101(d), (p). Here, the evidence indicates that almost all components and equipment needed to manufacture methamphetamine by the red phosphorus method were found in the basement area or in the garbage. Mr. Hepton admitted in statements to the police that he had completed the process up to the point that he only needed to precipitate out the methamphetamine crystals. The State's expert testified that during the process of drying the final product, Epsom salts (also found in the basement) added to the ether increases its volatility. From this evidence, a reasonable juror could conclude beyond a reasonable doubt that Mr. Hepton was guilty of processing methamphetamine or its immediate precursor.
II. Reckless Burning. Relevant to the charge here, a person is guilty of first degree reckless burning if he or she recklessly damages a building by knowingly causing a fire. RCW 9A.48.040. Mr. Hepton contends there is insufficient evidence that he knowingly caused a fire. A person acts knowingly if he or she knows or reasonably should have known of facts or circumstances described by a statute defining a criminal offense. RCW 9A.08.010(1)(b). If he had known that placing a beaker of methamphetamine-laced ether on a heat source would cause a fire, Mr. Hepton argues, he would not have done it. Consequently, no reasonable juror could find that he acted knowingly.
RCW 9A.08.010 permits a jury to find that a defendant has subjective knowledge if the jury finds that an ordinary person would have had knowledge under the circumstances. State v. Shipp, 93 Wash.2d 510, 516, 610 P.2d 1322 (1980). In other words, if the jury found that Mr. Hepton had information that reasonably should have led him to know the fact that his actions would cause a fire, the jury was entitled to find that he knowingly caused the fire. In its ruling denying Mr. Hepton's motion to dismiss the charge of reckless burning, the trial court stated that it found the knowledge element in Mr. Hepton's knowing placement of combustible substances over heat. Although the State presented no direct evidence that Mr. Hepton knew the methamphetamine compound was combustible, the jury was permitted to infer this knowledge from evidence that he had experience with the chemicals involved. He admitted attempting to manufacture methamphetamine before. Reviewing the evidence and inferences arising from that evidence in the light most favorable to the State, we conclude that a reasonable juror could find that Mr. Hepton knowingly caused the fire.

UNANIMITY INSTRUCTION
During the State's case in chief, Ms. Ratliff was allowed to testify that she discovered Mr. Hepton cooking methamphetamine in the basement two or three days before the *240 fire. Defense counsel submitted a limiting instruction that was accepted by the court and the State:
Evidence has been introduced in this case that the defendant may have manufactured a controlled substance prior to the date of the crime charged. This evidence has been introduced solely for the questions of whether the defendant had knowledge of the manufacturing process and the potential dangers associated with the process. You must not consider this evidence for any other purpose.
Clerk's Papers (CP) at 121 (jury instruction 24). For the first time on appeal, Mr. Hepton contends the State presented evidence of more than one act of manufacture, and asserts the trial court erred in failing to instruct the jury that it had to unanimously agree on a particular act to convict.
If the State presents evidence of more than one act that could form the basis of one count charged, either the State must tell the jury which act to rely on in its deliberations or the court must instruct the jury to agree on a specific act. State v. Kitchen, 110 Wash.2d 403, 409, 756 P.2d 105 (1988) (citing State v. Petrich, 101 Wash.2d 566, 570, 683 P.2d 173 (1984)). Failure to follow one of these options is constitutional error that is not harmless if a rational juror could have a reasonable doubt as to any one of the alleged acts. Id. at 409, 411, 756 P.2d 105. Because of its constitutional implications, this issue may be raised for the first time on appeal. RAP 2.5(a)(3); State v. Fiallo-Lopez, 78 Wash.App. 717, 725, 899 P.2d 1294 (1995).
As the State notes in response, the trial court instructed the jury that it was to consider only Mr. Hepton's acts on October 10, the day of the fire. Further, the trial court included the limiting instruction proposed by Mr. Hepton informing the jury that the evidence of prior manufacture of methamphetamine could only be considered in determining Mr. Hepton's knowledge of the process and dangers associated with manufacture. Jurors are presumed to follow instructions. State v. Stein, 144 Wash.2d 236, 247, 27 P.3d 184 (2001). In light of the State's clear direction to the jury to rely only on the acts that took place on October 10, a unanimity instruction was not necessary in this case. Kitchen, 110 Wash.2d at 409, 756 P.2d 105.

ADMISSION OF THE CONFESSION
Pro se, Mr. Hepton first contends his statements to police should not have been admitted because they were not made voluntarily. He claims that several actions by police officers psychologically pressured him to confess: police officers (1) frightened him by playing an audio tape of Ms. Ratliff stating that he had cooked methamphetamine in the basement on a prior occasion; (2) threatened to arrest Ms. Ratliff and take away her children; and (3) promised to speak to the prosecutor on his behalf if he cooperated.
A trial court's determination that a defendant's statements were made voluntarily will not be disturbed on appeal if there is substantial evidence in the record to support the court's decision. State v. Cushing, 68 Wash.App. 388, 393, 842 P.2d 1035 (1993). Any statement that is the product of physical or psychological coercion is involuntary and inadmissible. Id. at 392, 842 P.2d 1035. A statement is coerced if the court finds that the defendant's will was overborne. State v. Broadaway, 133 Wash.2d 118, 132, 942 P.2d 363 (1997).
Following a CrR 3.5 hearing, the trial court found that Mr. Hepton was properly advised of his constitutional rights before he spoke with police on three different occasions. Further, the court found that even if officers made comments regarding possible sentencing scenarios, such comments did not constitute promises or guaranties. The evidence supports these findings. A detective testified at the CrR 3.5 hearing that he first interviewed Mr. Hepton on October 24. On that date, Mr. Hepton agreed to talk after he was advised of his Miranda[2] rights. Later that day, Mr. Hepton called the detective and stated that he had lied during his earlier statement. Specifically, he recanted his earlier assertion that another man had cooked *241 methamphetamine in the basement earlier on the day of the fire. The detective again interviewed Mr. Hepton three days later. As before, Mr. Hepton was advised of his rights and he agreed to talk. During this final interview, the detective told Mr. Hepton that he faced sentencing enhancements for child endangerment and that his statements would show cooperation. Another detective testified that during the last interview Mr. Hepton said he hoped his cooperation would assist him at sentencing. The detective responded that he could make no promises regarding his sentence, but that taking responsibility for his actions was a good first step.
For his part, Mr. Hepton testified that he had been under the influence of methamphetamine during his first interview. He also told the court that officers threatened to charge his girlfriend if he did not confess. Further, he claimed that the detectives offered the DOSA[3] treatment option as an incentive for his confession. These assertions were disputed by the detectives, who testified that he appeared lucid during his interviews. One detective remembered Mr. Hepton asking about DOSA and remembered telling Mr. Hepton that DOSA was not usually offered to a manufacturer of methamphetamine. The credibility of these witnesses and the weight assigned to their testimony were the province of the trial court. State v. Camarillo, 115 Wash.2d 60, 71, 794 P.2d 850 (1990). Accepting the trial court's determination that the detectives gave the more credible rendition of the interviews, we find substantial evidence to support the trial court's determination that Mr. Hepton's will was not overborne. Accordingly, his statements were voluntary and admissible.

ER 404(b) ADMISSION OF PRIOR BAD ACTS
Mr. Hepton's final pro se contention is that the trial court erred in allowing Ms. Ratliff to testify that she discovered him cooking methamphetamine in the basement a few days before the fire. He contends the trial court did not weigh the probative value of this evidence against its highly prejudicial effect.
Under ER 404(b), evidence of other crimes or misconduct is not admissible to show that a defendant is a "criminal type." State v. Lough, 125 Wash.2d 847, 853, 889 P.2d 487 (1995), quoted in State v. Brown, 132 Wash.2d 529, 570, 940 P.2d 546 (1997). These other crimes or misconduct may be admitted, however, to prove motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. ER 404(b); State v. Jackson, 102 Wash.2d 689, 693, 689 P.2d 76 (1984). The trial court must first find by a preponderance of the evidence that the claimed misconduct actually occurred. Brown, 132 Wash.2d at 571, 940 P.2d 546. Then, if the court finds that the evidence is admissible for one of the authorized purposes, it must identify on the record the purpose for which it is admitted, and must determine whether its probative value outweighs its prejudicial effect. Id. The trial court's decision to admit evidence of other crimes or misconduct is discretionary and is reviewed for abuse of discretion. Id. at 571-72, 940 P.2d 546.
In this case, the trial court ruled that the incident described by Ms. Ratliff was proved by a preponderance of the evidence. Although Mr. Hepton contends Ms. Ratliff's credibility was undermined by her history of crimes of dishonesty and her desire to arrange a plea agreement with the State, the trial court's determination of credibility is unassailable on appeal. Camarillo, 115 Wash.2d at 71, 794 P.2d 850. The trial court further ruled that evidence of this earlier attempt to manufacture methamphetamine was relevant to show Mr. Hepton's control of the basement area, his knowledge of the manufacturing process, and his plan or preparation of the scheme to manufacture. Mr. Hepton does not challenge these reasons for admission and they generally comply with the nonexclusive reasons found in ER 404(b).
What the trial court failed to do was to balance on the record probative value *242 versus prejudicial effect. Mr. Hepton contends this is a fatal error. While Washington courts generally observe that this balancing test should be done on the record, its absence is not fatal if the trial court has established a careful record of the reasons for admission. Jackson, 102 Wash.2d at 694, 689 P.2d 76. When the trial court identifies the purpose for which the evidence is believed to be relevant, the reviewing court can determine whether the probative value of the evidence outweighs its prejudicial effect. Id. Here, the trial court found that the evidence of the earlier attempt to manufacture methamphetamine showed that Mr. Hepton knew generally what he was doing and the risks involved. This information was highly relevant to the knowledge element of the reckless burning charge. The prejudicial effect was somewhat diminished by the jury instruction limiting the relevance of this evidence to the issue of Mr. Hepton's knowledge of the manufacturing process and its dangers. On balance, the prejudicial effect of Ms. Ratliff's testimony did not outweigh its probative value. Accordingly, the trial court did not abuse its discretion in admitting this testimony.

CROSS-APPEAL ON MULTIPLE SENTENCE ENHANCEMENTS FOR CHILD VICTIMS OF METHAMPHETAMINE MANUFACTURE
On cross-appeal, the State challenges the trial court's refusal to submit special interrogatory verdict forms for each of the five children who were in Ms. Ratliff's home at the time of the fire. The forms asked:
Was [name of child] present or upon 912 East Desmet, the premises of manufacture during commission of the crime in Count I and was [name of child] under the age of eighteen years during the commission of the crime under Count I?
CP at 225-29. In proposing the special interrogatory verdicts, the State was attempting to establish a basis for multiple sentence enhancements for endangerment of a child. RCW 9.94A.510(6), .605.
When a defendant has been convicted of manufacturing methamphetamine and the State has specially alleged and proven beyond reasonable doubt that the crime was committed when a person under the age of 18 was present on the premises of manufacture, the sentencing court is required to add 24 months to the standard range sentence for the offense. RCW 9.94A.510(6), .605. The State contends multiple enhancements are allowed by these statutes and are reasonable because one who endangers multiple children is more culpable than one who endangers only one child.
Our goal in statutory interpretation is to identify and give effect to the Legislature's intent. State v. Spandel, 107 Wash.App. 352, 358, 27 P.3d 613 (citing State v. Bright, 129 Wash.2d 257, 265, 916 P.2d 922 (1996)), review denied, 145 Wn.2d 1013 (2001). If, however, the language of a statute is unambiguous, the statute is not subject to judicial interpretation. Id. Any ambiguity is interpreted to favor the defendant (the rule of lenity). Id.
In this case, the clear language of RCW 9.94A.510(6) provides that 24 months shall be added to the standard sentence "for any ranked offense" that involves a violation of the controlled substances act as well as a violation of RCW 9.94A.605. This language indicates that the 24 month enhancement is applied to each controlled substance offense, not to each child victim. If the Legislature intended to allow multiple enhancements for multiple victims, it could have, for example, provided that the 24 month enhancement would apply to each violation of RCW 9.94A.605. As they stand, neither RCW 9.94A.510(6) nor RCW 9.94A.605 suggests the possibility of enhancements for multiple victims of a single controlled substance offense.
Spandel, cited by the State to support its argument that multiple violations support multiple enhancements, is inapposite. In Spandel, the appellate court addressed whether the deadly weapon enhancement statute, former RCW 9.94A.310, authorizes multiple enhancements related to a single offense to run consecutively to each other. Spandel, 107 Wash.App. at 358, 27 P.3d 613, held that the clear language of the statute provides that all deadly weapon enhancements *243 must run consecutively to all other deadly weapon enhancements, even multiple enhancements added to one underlying offense. The language of the deadly weapon enhancement statute specifically provides for multiple enhancements, while the language of the child endangerment statutes does not. Because the language of RCW 9.94A.510(6) and RCW 9.94A.605 is plain and unambiguous, our inquiry must end here. State v. Lusby, 105 Wash.App. 257, 266, 18 P.3d 625, review denied, 144 Wash.2d 1005, 29 P.3d 718 (2001). The trial court properly found that these statutes do not authorize multiple enhancements for a single controlled substance offense.
Affirmed.
WE CONCUR: BROWN, C.J., and KATO, J.
NOTES
[1] Although not discussed at the trial level, Mr. Hepton also lacks standing to challenge a search of someone else's garbage can. See State v. Jones, 146 Wash.2d 328, 332, 45 P.3d 1062 (2002) (a defendant has no standing to challenge a search of an item he or she does not own unless the defendant is entitled to assert automatic standing).
[2] Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).
[3] The Drug Offender Sentencing Alternative (DOSA) is authorized by former RCW 9.94A.120(6) (2000) for certain drug offenders.