[No. 28820-6-II. Division Two. April 13, 2004.]

THE STATE OF WASHINGTON, *Respondent*, v. GARY DEAN KEENA, *Appellant*.

*Thomas E. Doyle* and *Patricia A. Pethick*, for appellant.

*Edward G. Holm, Prosecuting Attorney*, and *Steven C. Sherman, Deputy*, for respondent.

MORGAN, J. — Gary Dean Keena appeals his conviction for manufacturing methamphetamine. He argues that the evidence is insufficient to support a finding of completed

manufacture, and that the trial court erred by refusing to instruct on attempted manufacture. We affirm.

On February 7, 2002, Detective Eugene Duprey and other officers went to Keena's residence. They were investigating an anonymous tip of "possible manufacturing methamphetamine."[1] As they arrived, "[n]umerous people started scattering different directions."[2] Duprey asked for Keena and was directed to the "gazebo" or "cabana" in which Keena lived.[3]

Duprey went to the gazebo and spoke with Keena, who gave consent for Duprey to enter. On top of a wood stove, Duprey observed "a thermos, glass jar with a paper towel over the top of it, white film layer and then the blue liquid."[4] He knew that these were materials used in the manufacture of methamphetamine—"the blue liquid would be anhydrous ammonia, the white film would be pseudoephedrine and then possibly in the jar would probably be anhydrous ammonia or lithium, could be combined with kerosene."[5] He sought and obtained a telephonic search warrant, and the ensuing search revealed numerous items commonly used to manufacture methamphetamine.

On February 12, 2002, the State charged Keena with manufacturing methamphetamine. A jury trial was held two months later. Jane Boysen, a forensic scientist with the Washington State Patrol Crime Laboratory, testified that the "Nazi" method of manufacturing methamphetamine involves extracting ephedrine from over-the-counter cold medications, combining the ephedrine with lithium and anhydrous ammonia, and "salting out" the result.[6] She said that she had tested or observed items taken from the scene, including a glass jar with residue, Xylol (an organic sol-

---

[1] 2 Report of Proceedings (RP) (Apr. 23, 2002) at 42.

[2] 2 RP at 43.

[3] 2 RP at 44.

[4] 2 RP at 49.

[5] 2 RP at 49-50.

[6] 2 RP at 91-92.

vent), muriatic acid (usable to "salt out" the drug), tubing, rock salt, Heet, and aluminum foil, many of which were commonly used in manufacturing methamphetamine. Her findings were "consistent with the extraction of pseudo-ephedrine"[7] during the methamphetamine manufacturing process, and with "the ongoing manufacture of meth-amphetamine."[8]

At the close of the State's case, Keena moved for a directed verdict. He argued that the evidence was insuffi-cient to show "that methamphetamine was actually manu-factured on the date and time in question," and that "[w]ithout a controlled substance there cannot be a viola-tion of the statute."[9] The trial court denied Keena's motion, and he rested without presenting evidence.

Keena requested a jury instruction on the *attempted* manufacture of methamphetamine. He argued that at-tempted manufacture of methamphetamine is a lesser included offense of the crime of manufacturing meth-amphetamine. The trial court declined to give such an instruction, and the jury convicted as charged.

Two issues arise on appeal. (1) Is the evidence sufficient to support a conviction for manufacturing metham-phetamine? (2) Did the trial court err by declining to instruct on the *attempted* manufacture of methampheta-mine?

I

Keena argues that the evidence does not show that he succeeded in producing methamphetamine, and thus that the evidence is not sufficient to support his conviction for the crime of manufacturing methamphetamine. Evi-dence is sufficient if a rational trier of fact taking it in the light most favorable to the State could find beyond a

[7] 2 RP at 95.

[8] 2 RP at 97.

[9] 2 RP at 112.

reasonable doubt each element of the crime charged.[10] Accordingly, the question is whether a rational trier taking the evidence in the light most favorable to the State could find beyond a reasonable doubt that Keena knowingly "manufactured" a controlled substance.[11]

■ The statutes answer yes. RCW 69.50.101(p) defines "[m]anufacture" as "the production, *preparation*, propagation, compounding, conversion, or *processing* of a controlled substance, either directly or indirectly or by extraction from substances of natural origin, or independently by means of chemical synthesis, or by a combination of extraction and chemical synthesis, and includes any packaging or repackaging of the substance or labeling or relabeling of its container." (Emphasis added.) RCW 69.50.101(d) defines a "[c]ontrolled substance" as a "drug, substance, or immediate precursor included in Schedules I though V as set forth in federal or state laws, or federal or board rules."[12] RCW 69.50.206(d)(2) places methamphetamine in Schedule II, and WAC 246-889-020 designates pseudoephedrine as a precursor if not incorporated in a "drug or cosmetic [that] can be lawfully sold . . . over-the-counter . . . or by a prescription." The evidence shows that Keena had in his house, in plain view, most of the objects and substances needed to "prepare" or "process" methamphetamine, and a rational trier applying RCW 69.50.101(p)'s broad definition of manufacture could find that he was "preparing" or "processing" that drug.

The cases also answer yes. In *State v. Davis*,[13] for example, Division One said:

---

[10] *State v. Salinas*, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992).

[11] RCW 69.50.401(a); 11 WASHINGTON PRACTICE: WASHINGTON PATTERN JURY INSTRUCTIONS: CRIMINAL 50.11, at 650 (2d ed. 1994).

[12] *See also State v. Hepton*, 113 Wn. App. 673, 681-82, 54 P.3d 233 (2002), *review denied*, 149 Wn.2d 1018 (2003).

[13] 117 Wn. App. 702, 72 P.3d 1134 (2003).

[T]he pivotal question is whether, under . . . chapter 69.50 RCW, it is possible to manufacture a drug without possessing it. It is.[14]

The *Davis* court quoted RCW 69.50.101(p), then continued:

As the evidence in this case demonstrates, one can make a number of drugs, including methamphetamine, from ingredients that are not in themselves controlled substances. And under [RCW 69.50.101(p)], a person who knowingly plays even a limited role in the manufacturing process is guilty, even if someone else completes the process. Thus, a person need not possess the final product in order to engage "indirectly" in the "production, preparation, propagation, compounding, conversion, or processing of a controlled substance." RCW 69.50.101-(p). In fact, courts have found evidence sufficient to support convictions for manufacturing methamphetamine where the defendants possessed lab equipment and partially processed methamphetamine, but not the final product.[15]

In *State v. Todd*,[16] for another example, the evidence was sufficient where the police found the defendant in possession of several items used only to make methamphetamine, even though they did not find the drug itself.[17]

Based on all these authorities, we conclude that if the defendant had a combination of items that generally has no purpose other than the manufacture of methamphetamine, the evidence is sufficient to support reasonable inferences of "preparation" and "processing," and thus of manufacture, even if the evidence does not show that the defendant had the completed drug. As a result, the evidence is sufficient here.

---

[14] 117 Wn. App. at 708.

[15] 117 Wn. App. at 708.

[16] 101 Wn. App. 945, 6 P.3d 86 (2000).

[17] 101 Wn. App. at 952. *See also State v. Zunker*, 112 Wn. App. 130, 139, 48 P.3d 344 (2002) (grinding pseudoephedrine powder "is a preparatory step to the meth 'cooking' process"), *review denied*, 148 Wn.2d 1012 (2003).

## II

■ Keena also argues that he was entitled to an instruction on the lesser included offense of attempting to manufacture methamphetamine. A trial court must instruct on a lesser offense when two "prongs," one legal and one factual, are met:[18] (1) Each element of the lesser crime must be included within the charged crime ("the legal prong"), and (2) the evidence, when taken in the light most favorable to the instruction's proponent, must give rise to a reasonable inference that the lesser crime was committed *instead of* the charged crime ("the factual prong").[19]

Preliminarily, the legislature may have conflated attempted manufacture and completed manufacture into a single crime. Although RCW 69.50.401 does not expressly include attempts to manufacture,[20] RCW 69.50.407 provides that a person who attempts or conspires to commit an offense defined in chapter 69.50 RCW is subject to the same maximum term as if the person had consummated the offense that the person was attempting or conspiring to commit.[21]

■ This case does not require us to decide whether the legislature has conflated attempted manufacture and completed manufacture, for even assuming that it has not, and that each element of attempted manufacture is included within completed manufacture, the evidence here will not support a reasonable inference that Keena attempted to manufacture without also completing such manufacture. As seen above, completed "manufacture" includes "preparing," "processing," or extracting a controlled substance (includ-

---

[18] *State v. Berlin*, 133 Wn.2d 541, 545-46, 947 P.2d 700 (1997).

[19] *State v. Fernandez-Medina*, 141 Wn.2d 448, 455-56, 6 P.3d 1150 (2000); *State v. Bergeson*, 64 Wn. App. 366, 369, 824 P.2d 515 (1992); *State v. Pettus*, 89 Wn. App. 688, 697-98, 951 P.2d 284, *review denied*, 136 Wn.2d 1010 (1998).

[20] *Compare State v. Gjertson*, 71 Wn.2d 757, 759 n.3, 430 P.2d 972 (1967) (collecting substantive criminal statutes that refer to attempt).

[21] *See State v. Austin*, 105 Wn.2d 511, 515-16, 716 P.2d 875 (1986); *State v. Langworthy*, 20 Wn. App. 822, 825-26, 583 P.2d 1231 (1978), *rev'd*, 92 Wn.2d 148, 594 P.2d 908 (1979). *Cf. State v. Roby*, 67 Wn. App. 741, 840 P.2d 218 (1992).

ing methamphetamine) or an immediate precursor (including pseudoephedrine). The evidence observed by Duprey and seized during the search of Keena's home supports a reasonable inference that Keena was "preparing" and "processing" methamphetamine,[22] whether or not he had completed his preparation and processing. The evidence also shows that Keena was in possession of pseudoephedrine that had been extracted from an over-the-counter cold remedy. Even when the evidence is taken in the light most favorable to Keena, it will not support a reasonable inference that he attempted to manufacture *without also completing that manufacture*. We conclude that the "factual prong" for a lesser included instruction has not been met, and that the trial court ruled correctly by declining to instruct on attempt.

Affirmed.

QUINN-BRINTNALL, C.J., and HUNT, J., concur.

---

[22] *Cf. Hepton*, 113 Wn. App. at 681-83.