143 P.3d 880 (2006)
STATE of Washington, Respondent,
v.
Deborah Dianne FORRESTER, Appellant.
No. 32883-6-II.
Court of Appeals of Washington, Division 2.
October 3, 2006.
*881 Thomas Edward Doyle, Attorney at Law, Hansville, WA, for Appellant.
James C. Powers, Thurston County Prosecuting Attorney Ofc, Olympia, WA, for Respondent.
ARMSTRONG, J.
¶ 1 Deborah Dianne Forrester appeals her sentence arising from her conviction for manufacturing methamphetamine in violation of former RCW 69.50.401(a)(1)(ii) (2002). She argues that (1) the trial court erred in sentencing her under former RCW 69.50.401(a)(1)(ii) when the jury never identified the particular form of methamphetamine underlying the conviction, (2) her counsel was ineffective in failing to object when the trial court sentenced her under former RCW 69.50.401(a)(1)(ii), and (3) the State produced insufficient evidence to support the jury's conclusion. But in State v. Cromwell, 157 Wash.2d 529, 140 P.3d 593 (2006), our Supreme Court held that former RCW 69.50.401(a)(1)(ii) applies to all forms of methamphetamine. Thus, the trial court properly sentenced Forrester, and her counsel was not ineffective in failing to object to the sentence. Finally, sufficient evidence supports Forrester's conviction; accordingly, we affirm.

FACTS
¶ 2 Deborah Forrester lived in a mobile home she rented from Guy and Kamiele Anderson. Forrester's father, Clarence Hankins, originally paid the rent but stopped paying when Kevin Clothier moved in with Forrester. Shortly after Clothier moved in, he left to live with Hankins after a fight with Forrester. Because nobody was paying the rent, the Andersons obtained a court order evicting Clothier and Forrester.
¶ 3 During the week before Anderson obtained the eviction order, Hankins had visited his daughter five or six times and had not noticed a chemical smell or unusual activity at the property. And when Hankins visited the house on the day Forrester and Clothier planned to move out, he smelled "[n]othing unusual," but he saw a man and woman at the house. Report of Proceedings (RP) at 286. He had seen the woman sneak in and out of the property before. Hankins "was... strict about [Forrester] having people [at the house]" because Forrester previously used drugs and he did not want her around people who took drugs. RP at 288.
¶ 4 Later the same day, Guy Anderson went to the rental to get the house key and inspect the residence. When Guy arrived, Clothier met him in the front yard and gave him the house key. Guy entered the house through the back door.
¶ 5 Forrester testified that as she was moving from the rental, Guy arrived, demanded the key and pushed his way through the door. She said he walked down the hallway and kicked in a bedroom door where Forrester's friend had stayed the night. Guy *882 said that he saw a triple beam scale and accused her of manufacturing methamphetamine, an accusation she denied.
¶ 6 At trial, Guy testified that "as [he] entered the back door, [his] eyes burnt from a chemical of some sort that was in the air." RP at 56. He saw hoses running out the back door, scales, a pressure cooker, and hoses and needles lying around in a bedroom. Guy knew that Clothier and Forrester had a history of manufacturing methamphetamine. Guy told Clothier that he was calling 911 because he thought the two had a drug lab in the house.
¶ 7 Guy testified that when he called 911, Clothier panicked and "gathered up the pressure cooker with the hoses," put them in his truck and left. RP at 58-59. Guy saw a man with a duffle bag come out of a bedroom, leave the house, and drive away. He also saw a woman come out of another room and run away from the house.
¶ 8 Guy said that Forrester stayed at the house and he heard her breaking up Pyrex glass and glass tubing. Forrester denied breaking any glass. Guy also said that before the police arrived, he heard Forrester flush the toilet several times.
¶ 9 When Thurston County Sheriff's Deputy Chris Ivanovich arrived, Forrester let him and Guy into the house and showed them around. Ivanovich said that his eyes did not burn and that he did not smell anything unusual when he entered the home. Guy testified that as they walked through the trailer, he and the officer saw pipes, scales, used syringes, drugs, and other paraphernalia. They also saw broken glass, which Forrester explained came from a coffee pot and a vase that she had dropped earlier.
¶ 10 Ivanovich testified that he saw different containers with some sort of powder and "a number of capsules that looked to . . . be prescription capsules and tablets." RP at 158. On cross-examination, Guy and Ivanovich both admitted that they did not see any chemicals, solvents, or lye inside the home. Nonetheless, Ivanovich called for specially trained officers to investigate a possible methamphetamine laboratory.
¶ 11 The investigation team searched the house, a metal shed, and a brown well house on the property. Deputies found methylethyl ketone, a clear liquid, in the well house, several sets of rubber gloves in a trash pile, and pieces of a broken condenser tube near the trash pile outside the trailer. When the team searched the metal shed, they found several containers holding different types of liquids, containers with red residue on them, and iodine. Investigators also found muriatic acid, empty peroxide containers, rubber gloves, a gas can with red residue on the cap, paint thinner, a makeshift funnel, and a propane tank with a new, slightly corroded valve.
¶ 12 In the trailer's dining room, the team found a rubber band tourniquet, rubber gloves, a container of Betadine, liquid iodine, plastic tubing, and a bag containing syringes and drug paraphernalia.
¶ 13 On the back porch, they found plastic tubing and a metal container of Coleman fuel. Both are commonly used in manufacturing methamphetamine. They also found a broken condenser tube, a triple beam scale, and a coffee pot containing pseudoephedrine.
¶ 14 In the kitchen, deputies found a makeshift funnel, a plastic container with white crystal residue, and used Pyrex plates. In the bathroom, deputies found a container of acetone, several containers of unknown liquids, a pickle jar with a liquid containing pseudoephedrine, and a white pill on the floor. One deputy testified that "[t]he toilet appeared to have numerous amounts of liquids and items dumped into it" and had visible white residue in it. RP at 198.
¶ 15 In one of the bedrooms, the investigators found hose clamps, Teflon tape, a black bag containing syringes, containers of white powder residue, containers of red powder, a digital scale, small plastic baggies, some "reddish" liquid suspected to be methamphetamine, and a milk jug cap with electrical tape stuck to it. RP at 205. The white powder residue tested positive for pseudoephedrine. The red powder tested positive for red phosphorous. Further, one of the investigators testified that, in his experience, people often attached hoses to milk jugs and *883 used them to generate hydrochloric acid gas to crystallize the methamphetamine.
¶ 16 In the master bedroom, investigators found a smoking device, a loaded syringe, a digital scale, a tin container full of syringes, and other drug paraphernalia. In the laundry room, the deputies found a pair of safety glasses with reddish stains all over them, a plastic tube with a metal end, and a hotplate.
¶ 17 A state patrol forensic scientist testified that she detected evidence of methamphetamine manufacture in various samples from the residence.
¶ 18 The State charged Forrester with unlawful manufacture of methamphetamine, a violation of former RCW 69.50.401(a)(1)(ii). The State joined Clothier as a co-defendant. A jury convicted Forrester on the manufacture charge and found Clothier not guilty. Forrester's offender score was 0 and the methamphetamine manufacture charge carried a seriousness level of 10. The trial court gave Forrester a DOSA[1] sentence of half of the midpoint of her standard range sentence of 51-68 months, for a total confinement period of 29.75 months.

ANALYSIS

I. SENTENCING UNDER FORMER RCW 69.50.401(a)(1)
¶ 19 Forrester argues that although the jury convicted her of manufacturing methamphetamine, it did not find that she manufactured methamphetamine in its base form. She contends that under Blakely v. Washington, 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004), the trial court could sentence her under former RCW 69.50.401(a)(1)(ii) only if the jury found that she had manufactured methamphetamine base. Because the jury did not determine the particular substance underlying her conviction, Forrester reasons that the trial court should have sentenced her under former RCW 69.50.401(a)(1)(iii), a statute with a lower seriousness level that would have resulted in a presumptive standard range sentence of 12-14 months.
¶ 20 Former RCW 69.50.401(a)(1) provided:
(a) Except as authorized by this chapter, it is unlawful for any person to manufacture... a controlled substance.
(1) Any person who violates this subsection with respect to:
....
(ii) amphetamine or methamphetamine, is guilty of a crime ...
(iii) any other controlled substance classified in Schedule I, II, or III, is guilty of a crime.
¶ 21 In State v. Morris, 123 Wash.App. 467, 474, 98 P.3d 513 (2004), we held that the former RCW 69.50.401(a)(1)(ii)'s language was "unambiguous," and that it prohibited manufacturing methamphetamine base, not methamphetamine hydrochloride. But in overruling Morris, our Supreme Court recently held that the term "methamphetamine" as used in former RCW 69.50.401(a)(1)(ii), means all forms of the drug. State v. Cromwell, 157 Wash.2d at 535-36, 140 P.3d 593. Thus, the trial court did not err in sentencing Forrester under that statute because, under Cromwell, the jury was not required to determine the particular substance underlying her conviction.

II. INEFFECTIVE ASSISTANCE OF COUNSEL
¶ 22 Because the trial court properly sentenced Forrester under former RCW 69.50.401(a)(1)(ii), we need not address her claim that counsel should have challenged the procedure.

III. SUFFICIENCY OF THE EVIDENCE
¶ 23 Forrester argues that the State presented insufficient evidence to support her conviction.
¶ 24 Evidence is sufficient to support a conviction if, after viewing the evidence in the light most favorable to the State, any rational trier of fact could have found guilt beyond a reasonable doubt. State v. Salinas, 119 Wash.2d 192, 201, 829 P.2d 1068 (1992) (citing State v. Green, 94 Wash.2d 216, 220-22, 616 P.2d 628 (1980)). *884 An insufficiency claim admits the truth of the State's evidence. Salinas, 119 Wash.2d at 201, 829 P.2d 1068 (citing State v. Theroff, 25 Wash.App. 590, 593, 608 P.2d 1254 (1980)). In reviewing a sufficiency challenge, we draw all reasonable inferences from the evidence in favor of the State and interpret the evidence against the defendant. State v. Partin, 88 Wash.2d 899, 906-07, 567 P.2d 1136 (1977) (citing State v. Woods, 5 Wash.App. 399, 404, 487 P.2d 624 (1971)).
¶ 25 Guy testified that "as [he] entered the back door, [his] eyes burnt from a chemical of some sort that was in the air." RP at 56. He saw hoses running out the back door, scales, a pressure cooker, and hoses and needles lying around in a bedroom. Guy heard Forrester breaking glass and repeatedly flushing the toilet immediately after he called 911. And after he called the police, Clothier panicked and put the pressure cooker and some hoses in his truck and quickly drove away. Guy also saw pipes, scales, used syringes, drugs, and other paraphernalia when he later walked through the house with the deputy.
¶ 26 Ivanovich also saw broken glass and different containers with some sort of powder and "a number of capsules that looked to .. . be prescription capsules and tablets." RP at 158.
¶ 27 Thurston County Sheriff's Deputy Mancillas testified that the methamphetamine lab processing team found methylethyl ketone and an unknown clear liquid in the well house, and found several sets of rubber gloves in a trash pile nearby. They also found pieces of a broken condenser tube outside the trailer. The team also searched a shed and found numerous containers with different liquids, containers with red residue all over them, iodine, muriatic acid, empty hydrogen peroxide containers, a gas can with red residue on the cap, paint thinner, makeshift funnels, and a propane tank with a slightly corroded valve.
¶ 28 Inside the house, investigators found a tourniquet, rubber gloves, Betadine, liquid iodine, plastic tubing that "obviously had something corrosive float through it," syringes, Coleman fuel, scales, containers with liquids that tested positive for pseudoephedrine, hose clamps, Teflon tape, small plastic baggies, acetone, containers with "reddish" liquid, red powder that tested positive for red phosphorous, smoking devices, safety glasses with reddish stains all over them, plastic tubing, Pyrex plates, makeshift funnels, containers with white powder and residue, and a hotplate. RP at 192-206. Deputy Mancillas also testified that the toilet "appeared to have numerous amounts of liquids and items dumped into it" and had a visible white residue in it. RP at 198.
¶ 29 The State's expert witness, state patrol forensic scientist Tami Kee, testified that pressure cookers are commonly used in manufacturing methamphetamine. She also testified that methylethyl ketone could be used in manufacturing methamphetamine. Kee also said that plastic gloves, Pyrex cooking plates, acetone, hot plates, Coleman fuel, plastic tubing, propane tanks, muriatic acid, hydrogen peroxide, paint thinner, and glass condenser tubes were all associated with manufacturing methamphetamine.
¶ 30 Although the deputies never actually found methamphetamine at Forrester's residence, a person need not possess the final product to be guilty of manufacturing a controlled substance. State v. Keena, 121 Wash. App. 143, 148, 87 P.3d 1197 (2004). And "courts have found evidence sufficient to support convictions for manufacturing methamphetamine where the defendants possessed lab equipment and partially processed methamphetamine, but not the final product." Keena, 121 Wash.App. at 148, 87 P.3d 1197 (quoting State v. Davis, 117 Wash.App. 702, 708, 72 P.3d 1134 (2003)). Further, police found solutions containing pseudoephedrine at Forrester's residence. And processing pseudoephedrine is a preparatory step to the methamphetamine manufacturing process. State v. Zunker, 112 Wash.App. 130, 139, 48 P.3d 344 (2002) (citing Smith v. State, 68 Ark.App. 106, 3 S.W.3d 712, 714 (1999)).
¶ 31 Based on the foregoing evidence, a reasonable juror could conclude beyond a reasonable doubt that Forrester manufactured methamphetamine. Accordingly, sufficient *885 evidence supported her conviction for manufacture of methamphetamine.
¶ 32 Affirmed.
We concur: HOUGHTON, P.J., and PENOYAR, J.
NOTES
[1] Drug Offender Sentencing Alternative.